## CAROLINE L. BRADLEY ET AL. *vs.* THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Under existing statutes of this State (General Statutes, §§ 1477, 1759, 3944 –3946; Public Acts of 1893, Chapter 169, § 3) the selectmen of a town have no power, without the owner's consent, to cut or trim trees on his land adjoining a highway, in order to enable a telephone company to construct and maintain its line in the highway. Nor can such cutting, if done by the telephone company, be justified upon the ground that it was authorized by the selectmen as incident to a change of the telephone company's location from one side of the highway to the other, which change was directed by the selectmen in order to make way for the construction of an electric street railway.

The fact that the branches cut by the telephone company were an obstruction to the erection and operation of its line in its changed location, gave the company no additional or greater right in this respect, as its right to use the highway at all was upon the express statutory condition that it should not be exercised so as to "injure any tree without the consent of the owner."

[Argued June 6th—decided July 24th, 1895.]

ACTION to recover damages for the unlawful cutting and trimming of six trees upon the plaintiffs' premises; brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiffs for $350 damages, and appeal by the defendant for alleged errors in the rulings and charge of the court. *No error.*

The case is fully stated in the opinion.

*John W. Alling* and *James T. Moran*, for the appellant (defendant).

I. Whenever growing trees, whether within or without the limits of the highway, interfere with public travel, the town or its agents have the legal power to cut them down without notice to the landowner. *Ely* v. *Parsons*, 55 Conn., 83; *Hewison* v. *New Haven*, 34 id., 142; Wood on Nuisances, 277; *Beardsley* v. *Hartford*, 50 Conn., 529. Whether trees standing upon or overhanging the highways are obstructions and ought to be removed for the public benefit and safety, is a matter within the *quasi* legislative discretion conferred upon the selectmen; and the exercise of this discretion will not be reviewed by the courts, unless fraud is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. *Chase* v. *Oshkosh*, 81 Wis., 313; *Johnson* v. *District of Columbia*, 118 U. S., 19; *Jones* v. *New Haven*, 34 Conn., 13, 14; *Tate* v. *Greensboro*, 24 L. R. A., 671; *Detroit* v. *Beckman*, 34 Mich., 125.

Inasmuch as the public are entitled to have the whole width of a public road kept free for passing and repassing, an obstruction is not the less a nuisance because it is on the part of the highway not commonly used. *Turner* v. *Ringwood Highway Board*, L. R. 9 Eq., 422; *Boston* v. *Richardson*, 13 Allen, 159; Dillon on Mun. Cor., §§ 680, 683, 688.

II. Under §§ 2 and 3 of the Street Railway Act (Pub. Acts of 1893, Ch. 169), in addition to their general powers over highways, the selectmen are clothed with absolute authority and exclusive direction over the location of an elec-

tric street railway on the public highways; and in the exercise of that authority, if in their judgment the interests of the public demand it, may remove and re-locate existing structures upon the highways; and may make all orders necessary to carry into effect any such removals and re-locations.

It follows that if the selectmen find that a telephone pole or structure standing upon the highway, obstructs the proposed location of the street railway company, they may order the re-location of the telephone pole or structure in another place on the highway. But the selectmen cannot re-locate the poles, wires and fixtures in such a manner as to prevent the practical operation of the telephone company's line. If they deem it for the public benefit to order a re-location of the telephone poles, they must designate suitable locations. *City of Hannibal* v. *Mo. & K. Telephone Co.*, 21 A. & E. Corp. Cases, 47; Dillon on Mun. Cor., § 683.

III. The telephone company, in acting under the order and permit of the selectmen, is not liable in trespass for the trimming of the trees. The case of *Southern Bell Telegraph and Telephone Co.* v. *Constantine*, decided by the Fifth Circuit Court of Appeals in 1894, and reported in 61 Fed. Rep., 61, is, we think, the only case where issues similar to those involved in the case at bar have been passed upon.

The court erred in excluding the exhibits and accompanying testimony. The defendant was entitled to show that the removal of its line and the consequent trimming of the trees was not the voluntary act of the company, undertaken by it for its own private business purposes, but was done in obedience to the orders of the official bodies having jurisdiction over the care and management of the public highways, and of the location and re-location of street railways and telegraph and telephone lines. *Brainard* v. *Clapp*, 10 Cush., 6; *Tate* v. *Greensboro*, 114 N. Car., 392.

The tendency of judicial reasoning at the present time, is to the effect that telegraph and telephone poles and electric street railways do not constitute additional servitudes upon the highway. *People* v. *Eaton*, 24 L. R. A., 721; *Pierce* v. *Drew*, 136 Mass. 75. Booth on Street Railway Law, § 83.

The court erred in charging the jury that the defendant had no right to abate, as a public nuisance, the limbs and trees in question, unless it was shown that said trees and limbs interfered with the use of the street by the general public. *Hubbard* v. *Deming*, 21 Conn., 360; *Earl of Lonsdale* v. *Nelson*, 2 Barn. & C., 302; *Ely* v. *Parsons*, 55 Conn., 99.

*Edward H. Rogers*, for the appellee (plaintiffs).

I. The defense that the branches and limbs which were cut were a nuisance, is concluded by the verdict. *Burnham* v. *Hotchkiss*, 14 Conn., 311; *State* v. *Merritt*, 35 id., 314.

None of the trees which were cut or trimmed were " upon said highway," within the orders of the selectmen. The orders and permits of the selectmen, relied upon in justification of the defendant's acts, were to remove and relocate the poles and wires, and " to trim such trees upon said highway as may be necessary." The several trees which were trimmed were admittedly within the fence and not upon the highway, and although the defendant claims that some of the limbs or branches which were cut overhung the highway, such branches were the property of the plaintiffs, and any injury thereto is a trespass for which the owner may recover damages, unless some legal excuse or justification is shown. *Lyman* v. *Hale*, 11 Conn., 177; *Memphis Bell Telephone Co.* v. *Hunt*, 16 Lea, 456. It is immaterial whether such cutting was from the inside or outside of the fence. *Woodruff* v. *Neal*, 28 Conn., 167; Elliott on Roads and Streets, 520.

II. The jurisdiction of the selectmen over the highway, in the absence of a special statute, was limited to making it safe for travel. The mere fact that the branches and limbs which were cut, occupied space that the defendant desired or even needed for the erection of its poles and fixtures, was insufficient to justify the orders of the selectmen. *Tomlinson* v. *Leavenworth*, 2 Conn., 294; *Suffield* v. *Hathaway*, 44 id., 521, 528.

The defendant's acts were absolutely prohibited by the statutes of this State. General Statutes, §§ 3944, 3948, 3945, 3947, 1477, 1759, 1760.

The Street Railway Act of 1893 gave the selectmen no control or authority over the defendant. The defendant can have no greater rights against the plaintiffs than the railroad company would have had, and the latter is certainly " an electric power company," and " a company engaged in distributing electricity by wires or similar conductors," within the statutes of the State regulating the use of highways by such companies, and protecting the owners of trees from depredations of the kind complained of.

III. Any Act of the legislature which authorized the cutting of the plaintiffs' trees, either by the selectmen or the defendant, without providing compensation, would be unconstitutional and void. *Woodruff* v. *Neal,* 28 Conn., 167.

The right to the use of the streets for the maintenance, construction or erection of new or additional lines of poles, wires or fixtures, or both, could not of itself give any right to cut and injure trees, even in the absence of existing statutory prohibitions. The use of the street by the defendant is a new and additional use of the land through which the right of way passes, and just as much a taking of it as was the taking of it originally for the purposes of a highway. *Eels* v. *Amer. Telephone & Telegraph Co.,* 143 N. Y., 133; *Board of Trade Telegraph Co.* v. *Barnett,* 107 Ill., 507; *Western Union Tel. Co.* v. *Williams,* 86 Va., 696; *Chesapeake & Potomac Telephone Co.* v. *McKenzie,* 74 Md., 36; *Amer. Telephone & Telegraph Co.* v. *Pearce,* 71 id., 533; *Broome* v. *N. Y. & New Jersey Telephone Co.,* 42 N. J. Equity, 141.

TORRANCE, J. The complaint in this case alleges that the defendant wrongfully entered upon the land of the plaintiffs and cut and trimmed six trees growing thereon. The defendant filed three answers, the first being a general denial, and the second and third setting up certain facts in justification of the trespass charged. The case was tried to the jury, there was a verdict for the plaintiffs, and from the judgment upon the verdict the present appeal is brought.

The facts, upon which the questions raised by the appeal depend, may be stated as follows:—

The land on which the trees stood is bounded on a public highway, and it lies partly in New Haven and partly in East Haven. The six trees in question stood just within the fence line adjoining the highway, four of them being on the New Haven part of the land and two of them on the East Haven part, and their branches to some extent overhung the highway.

The defendant is a corporation created by the legislature of this State, and authorized by its charter to construct and maintain telephone lines, including poles, wires, and necessary fixtures, upon any highway of this State. It had, before the date of the alleged trespass, constructed a telephone line, along the east side of the highway which bounded the plaintiff's land, and was then operating the same.

On the 22d of May, 1894, the selectmen of East Haven issued the following document to the defendant: "Whereas, in the construction of the line of the New Haven Street Railway Company, certain telephone poles and wires interfere with the running and operation of the electrical conductors and cars of said company, and it is necessary that said telephone poles and wires should be removed and re-located, now therefore, we, the undersigned, selectmen of the town of East Haven, having under the statutes of the State direction and control over the placing, removal and re-location of structures upon the highways of towns, for the purpose of securing a proper construction of such railway, hereby order, direct and permit the removal and re-location by the Southern New England Telephone Company of sundry telephone poles and wires now located upon the layout of said railroad in said town of East Haven, and to trim such trees upon said highway as may be necessary for a distance of one foot from the outside wire of said line, according to the diagram hereto attached, and in accordance with the following detail, to wit: on the west side of Main street from the town line southeasterly to road known as Horse Cart way, first north of town hall."

On the same day the selectmen of New Haven issued to the defendant a document in substantially the same language,

respecting that part of the defendant's telephone line in New Haven which it was deemed necessary to change in the construction of the railway.

Under these documents the defendant removed its line of poles then standing on the east side of the highway aforesaid, to the west side of the same, and re-located its poles along said west side at the points designated by the selectmen. In so doing, some of them were placed in the highway adjoining the plaintiff's premises, and to permit the erection of the defendant's poles and wires at this point, the defendant cut and trimmed the six trees in question. In its second answer the defendant justified under these two documents issued by the selectmen as aforesaid. In its third answer it justified on the ground, in substance, that the parts of said trees cut and trimmed off were an obstruction and a nuisance to the public in the use of the highway, and more especially to the defendant in the construction and erection of its poles and wires at this point.

The controlling question in the case relates to the power of the selectmen, under the circumstances, to authorize the cutting and trimming of these trees; for if they possessed such a power, then the facts set up in the second answer, if true, would be a complete justification, independently of the other facts set up in the third answer; and if they did not possess it, then we think the defendant could not justify under the other facts set up in the third answer, for the reasons hereinafter stated.

As this power, if it existed at all in the selectmen, was given to them by statute, it will be necessary to examine the statutes under which it is, or may be, fairly claimed, such power was conferred; and in connection with that examination it will simplify matters perhaps, to look first at the statutes which prohibit the cutting and injuring of trees without the consent of the owner, by companies who are authorized to maintain electrical wires or fixtures of any kind on the public highways.

The statute under which the defendant in June, 1894, maintained its telephone line upon the highway in question, reads

as follows: " Every telegraph or telephone company may maintain and construct lines of telegraph or telephone upon any highway, or across any waters in this State, by the maintenance and erection of the necessary fixtures, including posts, piers, or abutments for sustaining wires; but the same shall not be so constructed as to incommode public travel or navigation, nor to injure any tree without the consent of the owner." General Statutes, § 3944.

The prohibition contained in this section, against injuring trees without the consent of the owner, was first passed in 1860; Public Acts of 1860, Chap. 66; and it has remained upon the statute book ever since. In addition to this prohibition, § 1477 of the General Statutes provides that every person who shall willfully injure any tree in a highway " for any purpose connected with the erection or maintenance of any telegraph, telephone, or electric light or power wires or fixtures, without the consent of the adjoining proprietor," shall be subject to fine and imprisonment; and § 1759 provides that " no telegraph, telephone, or electric light or power company shall cause to be cut down or injured any tree growing on the highway, for the purpose of constructing or maintaining any electrical wires or fixtures of any kind without the written consent of the adjoining proprietor," under penalty of a fine, and in default of payment, imprisonment.

Under these provisions it is quite clear that the defendant, upon its own authority, could not lawfully injure the trees in question, without the consent of the plaintiffs, either for the purpose of locating its line at this point originally, or of shifting and changing part of its line to this point from some other where it had been originally placed; and indeed the defendant makes no claim of this kind. What it does claim is that the selectmen had the power to compel it to change the location of its wires as ordered, and, as incidental to this, had the power to cut and trim the trees in question, which power to cut and trim the selectmen could and did delegate to it.

Assuming, for the purpose of the argument, that the selectmen could and did delegate such power to the defendant, if

they possessed it, the important question is, did they themselves possess it? Section 3945 of the General Statutes provides that no telephone company " nor any company or association engaged in distributing electricity by wires or similar conductors, or in using an electric wire or conductor for any purpose, may hereafter exercise any of the powers which may have been conferred upon it to erect or place wires, conductors, fixtures, structures, or apparatus of any kind over, on, or under any highway or public ground or to change the location of the same, without the consent of the adjoining proprietors, or, in case such consent cannot be obtained, without the consent in writing of two of the county commissioners of the county in which it is desired to exercise said powers."

The next section (3946) provides that the selectmen in their towns, but not in cities or boroughs, shall, subject to the provisions of the preceding section, " have full direction and control over the placing, erection, and maintenance of any such wires, conductors, fixtures, structures, or apparatus, including the re-locating or removal of the same * * * and may make all orders necessary to the exercise of such power of direction and control," etc. Section two of chapter 169 of the Public Acts of 1893, so far as it is applicable to towns alone, provides that before any street railway company shall proceed to construct its railway or lay additional tracks, or change its motive power in a town, it shall cause a plan thereof to be made as prescribed in said section and presented to the selectmen of such town for their acceptance and adoption, either as originally made or as modified after a hearing had thereon. Section three of the same Act provides that the selectmen shall have " exclusive direction over the placing, or locating of any tracks, wires, conductors, fixtures, structures of any such railway permanently located in the streets or highways, including the re-locating or removal of the same, or changes in the grade thereof, and for the purposes of any public improvement and including the power of designating the material, quality, and finish thereof, may make all orders necessary to the exercise of such power of direction and control, which orders shall be in writing, " etc.

Under this Act of 1893, the street railway company mentioned in the record, made a plan as prescribed by the Act, and presented it to the selectmen of New Haven and of East Haven, who accepted and adopted it. It was for the purpose of enabling said street railway company to build its road according to said plan, that the selectmen of both towns issued the two documents to the defendant under which it attempts to justify the cutting and trimming of the trees in question, in its second answer.

If we assume, for the sake of the argument, that the selectmen had the power under § 3946 of the General Statutes, or under section three of the Act of 1893, or under both, to order the defendant to remove and re-locate its poles and wires for the purpose indicated in said documents, the question still remains whether they, in order to accomplish this purpose, had the power to injure these trees, without the consent of the plaintiffs, and we think they had not. The power given to them by § 3946, to direct where the poles and wires of a telephone company shall be placed at the time of the original location of the line is, we think, given to them subject to the prohibitions not to injure trees, without the consent of the owner, contained in §§ 1477, 1759, and 3944 of the General Statutes, already quoted. Section 3946 does not repeal these other sections expressly, nor do we think it does so by implication. They all may well stand together, and if this be true as to an original location, we think it is equally true of a re-location as here.

Nor do we think that the powers of the selectmen are enlarged in this respect, by the Act of 1893. That Act does not purport to enlarge, in any way, the powers of selectmen over telephone companies ; neither does it expressly or by any necessary implication repeal the sections of the General Statutes aforesaid, prohibiting injury to trees without the owner's consent. We see no necessary inconsistency between those sections and the Act of 1893, and they may well stand together.

This construction gives due force and effect to all the statutes in question, and as it seems to us is the only one

which can be put upon them as a whole. If any insuperable difficulty arises from this construction, the remedy must be furnished by the legislature and not by the courts. At present, however, we do not well see how any such difficulty can arise. Our conclusion is that the selectmen had no power, without the plaintiffs' consent, to cut or trim the trees in question, to enable the telephone company to erect or operate its line in the new location; and consequently they did not and could not delegate that power to the defendant. In this view of the matter the rulings of court upon the evidence, and its charge to the jury upon the defense made by and under the second answer, as they appear of record, were correct.

Under its third answer the defendant's claim, in substance, was that the branches cut were an obstruction and a nuisance which prevented the defendant from erecting and operating its line in the new location, and that it had therefore a right to cut them under the circumstances.

Its right to use the highway at all, for the purpose of erecting and operating a telephone line, is given, as we have seen, by statute, and it is given expressly on condition that it shall not be exercised so as to "injure any tree without the consent of the owner." If the construction hereinbefore put upon the statutes which we have been considering is correct, the facts set up in the third answer, even if true, furnished no justification for cutting and trimming the six trees.

There is no error.

In this opinion the other judges concurred.