LENORA S. BRONSON V. ALBION TELEPHONE COMPANY ET AL.

FILED JANUARY 8, 1903.   No. 12,497.

Commissioner's opinion, Department No. 2.

1. **Public Street:** POLES AND WIRES: ABUTTING OWNERS: ADDITIONAL BURDEN: COMPENSATION. Poles and wires which permanently and exclusively occupy portions of a public street or highway, constitute an additional burden for which the abutting owner is entitled to compensation in case he is damaged thereby.

2. ———: ———: ———: ———: TELEPHONE COMPANY: DESTRUCTION OF AND INJURY TO TREES. Where an abutting owner has planted trees along the street adjacent to his property, under the terms of a city ordinance pursuant to statutory provisions, a telephone company which removes, destroys or injures such trees in erecting poles and wires under its franchise, is liable for the resulting damage, even though no unnecessary injury is inflicted.

3. **Damages:** INJURY IN INCIDENTAL RIGHT: REMEDY AT LAW: INJUNCTION. In case property is not taken directly by a public undertaking, but an owner suffers some injury in an incidental right growing out of his peculiar situation or position, so that ordinary condemnation proceedings and payment of damages in advance are not practicable, the owner will be left to his remedy at law and is not entitled to an injunction, unless upon proof of insolvency or some other special circumstance.

4. **Corporation:** FRANCHISE: POSSESSION: RIGHT: DIRECT PROCEEDING. It is sufficient for a corporation which seeks to defend upon the ground of a franchise to show that it is actually possessed of the franchise. Whether such franchise was acquired or is held rightfully, is to be determined only in a direct proceeding to oust the corporation or in a proceeding to which some one who claims a better title is a party.

Syllabus by court; catch-words by editor.

ERROR from the district court for Boone county. Action to obtain a perpetual injunction against the commission of an alleged trespass threatened. Heard below before PAUL, J. Judgment on demurrer for defendant. *Affirmed.*

*J. A. Price,* for plaintiff in error.

*Michael W. McGan, contra.*

POUND, C.

The plaintiff applied for an injunction to restrain defendant, a telephone company, from mutilating or injuring certain trees which she had planted in the street along and adjacent to her property. The trees had been planted under the provisions of a municipal ordinance and were rightfully in the street by virtue of sections 3-7, article 4, chapter 2,* and subdivision 24, section 69, article 1, chapter 14, Compiled Statutes.† The company was erecting poles and wires under a franchise from the city. Upon demurrer to the petition, the district court held that no cause of action was stated, and dismissed the suit.

The right of an abutting owner to maintain shade trees upon or overhanging the sidewalk is general and well recognized. In many jurisdictions it is customary; with us it has the sanction of express legislation. But this right is subject to all proper uses of the street for the primary purposes for which it was dedicated or condemned. Hence, although a telephone or telegraph company is undoubtedly liable for unnecessary or wanton injury to such trees in erecting its poles and wires, liability for injuries, even amounting to removal or destruction of the trees, which are necessary or proper in the due carrying out of the public undertaking, must depend upon the much-mooted question whether use of a street or highway for poles and wires is an ordinary use within the contempla-

---

* Cobbey's Annotated Statutes, secs. 3057-3061.

† Cobbey's Annotated Statutes, sec. 8736.

tion of the parties when it was dedicated or condemned, or is a new and additional burden, for which the abutting owner is entitled to compensation in case of injury.  The authorities are very evenly divided upon the question whether a telephone or telegraph company is liable to the owner of the trees where the injury does not go beyond what is necessary in the reasonable prosecution of the work. Such liability is affirmed in *Daily v. State*, 51 Ohio St., 348, 37 N. E. Rep., 710; *Board of Trade Telegraph Co. v. Barnett*, 107 Ill., 507; *Bradley v. Southern New England Telephone Co.*, 66 Conn., 559, 34 Atl. Rep., 499; *Clay v. Postal Telegraph-Cable Co.*, 70 Miss., 406, 11 So. Rep., 658; *McCruden v. Rochester R. Co.*, 28 N. Y. Supp., 1113. It is denied in *Wyant v. Central Telephone Co.*, 123 Mich., 51, 81 N. W. Rep., 928; *Southern Bell Telephone Co. v. Francis*, 109 Ala., 224, 19 So. Rep., 1; *Southern Bell Telephone Co. v. Constantine*, 61 Fed. Rep., 61; *Dodd v. Consolidated Traction Co.*, 57 N. J. Law, 482, 31 Atl. Rep., 980.  All of the cases first cited are from jurisdictions where poles and wires which permanently and exclusively occupy portions of the street or highway are held to constitute an additional burden.  Of those last cited, *Wyant v. Central Telephone Co.* is from a jurisdiction wherein it is held that there is no additional burden in such cases.  On the other hand, *Dodd v. Consolidated Traction Co.* was decided in a jurisdiction where telegraph and telephone poles and wires are not regarded as ordinary uses of the highway; and in *Southern Bell Telephone Co. v. Francis* it is held that the right to remove trees in whole or in part, in the proper prosecution of such an enterprise, does not depend upon the question whether there is an additional burden, but follows from the paramount right of the public, to which the right to maintain the trees is subject, of removing such trees when necessary for public uses.

If this proposition is maintainable, we need not consider how far the poles and wires are an ordinary use of the street.  But, in our opinion, it is not sound.  The right to

14

maintain the trees confers an additional value upon the abutting property. This value can not be cut off without due compensation. When the public conferred it, a valuable property right was created. Relying on the statutes and municipal ordinances pursuant thereto, owners have expended time and money in improving their property. This grant can not be resumed and the property thereby depreciated in value without compensation. Undoubtedly the grant in the first instance was subject to all ordinary uses to which the street might be put. But to say that it was subject to all public uses, whether ordinary or not, which might be deemed convenient thereafter is going entirely too far. It becomes necessary, therefore, to decide whether telegraph and telephone poles and wires which permanently and exclusively occupy portions of a public street or highway constitute an additional burden, for which the abutting owner is entitled to compensation in case he is damaged thereby. The text-writers are pretty well agreed that they do. Dillon, Municipal Corporations [4th ed.], sec. 698a; Elliott, Roads & Streets [2d ed.], secs. 705, 706; Lewis, Eminent Domain, sec. 131; Randolph, Eminent Domain, sec. 407. But Mr. Keasbey thinks it too soon to predict which view will prevail ultimately. Keasbey, Electric Wires in Streets & Highways, sec. 102. The adjudicated cases are ranged not very unequally on both sides. The following cases, among others, support the view that there is an additional burden: *Eels v. American Telephone & Telegraph Co.*, 143 N. Y., 133, 38 N. E. Rep., 202, and other decisions in New York; *Daily v. State*, 51 Ohio St., 348, 37 N. E. Rep., 710; *Callen v. Columbus Edison Electric Light Co.*, 66 Ohio St., 166, 64 N. E. Rep., 141; *Board of Trade Telegraph Co. v. Barnett*, 107 Ill., 507; *Postal Telegraph-Cable Co. v. Eaton*, 170 Ill., 513, 49 N. E. Rep., 365; *Halsey v. Rapid Transit Street R. Co.*, 47 N. J. Eq., 380, 20 Atl. Rep., 859; *Nicoll v. New York & New Jersey Telegraph Co.,** 42 Atl. Rep. [N. J.], 583; *Western Union Telegraph Co. v. Williams*, 86 Va., 696, 11 S. E. Rep., 106;

---

* Does not appear in 63 N. J. Law.

*Chcaspeake & Potomac Telephone Co. v. Mackenzie*, 74 Md., 36, 21 Atl. Rep., 690; *Stowers v Postal Telegraph-Cable Co.*, 68 Miss., 559, 9 So. Rep., 356; *Krueger v. Wisconsin Telephone Co.*, 106 Wis., 96, 81 N. W. Rep., 1041; *Pacific Postal Telegraph Co. v. Irvine*, 49 Fed. Rep., 113; *City of Spokane v. Colby*, 16 Wash., 610, 48 Pac. Rep., 248; *Kester v. Western Union Telegraph Co.*, 108 Fed. Rep., 926. The opposite view is supported by *Pierce v. Drew*, 136 Mass., 75 (decided by a divided court) ; *Julia Building Ass'n v. Bell Telephone Co.*, 88 Mo., 258, and other cases in Missouri ; *People v. Eaton*, 100 Mich., 208, 59 N. W. Rep., 145; *Cater v. Northwestern Telephone Exchange Co.*, 60 Minn., 539, 63 N. W. Rep., 111; *Magee v. Overshiner*, 150 Ind., 127, 49 N. E. Rep., 951; *Hershfield v. Rocky Mountain Bell Telephone Co.*, 12 Mont., 102, 29 Pac. Rep., 883; *Irwin v. Great Southern Telephone Co.*, 37 La. Ann., 63; *Hewett v. Western Union Telegraph Co.*, 4 Mackey [D. C.], 424. The question has been threshed over so many times that it would subserve no useful purpose to enter into an exhaustive review of these decisions. As Mr. Keasbey puts it very aptly, the crucial point is "whether the rights and privileges of the abutting owner in the use and maintenance of the street as such are affected." Keasbey, Electric Wires in Streets & Highways, sec. 102. At one time there was a tendency to attach some weight to the ownership of the fee of the street or highway. But it is becoming well settled, for obvious and convincing reasons, that that question is immaterial. *Eels v. American Telephone & Telegraph Co.*, 143 N. Y., 133; *Theobold v. Louisville, N. O. & T. R. Co.*, 66 Miss., 279, 6 So. Rep., 230; Keasbey, Electric Wires in Streets & Highways, secs. 83, 102; Dillon, Municipal Corporations [4th ed.], sec. 698*a*. And this court is in accord with that view. *Jaynes v. Omaha St. R. Co.*, 53 Nebr., 631. The case last cited involved an analogous question, and in passing thereon this court cited, with apparent approval, the decisions which hold telegraph and telephone poles and wires an additional **burden**. While the two cases are not in all respects the

same, we think the position taken in *Jaynes v. Omaha St.
R. Co.,* would be sufficient to turn the scale in this juris-
diction, if we were in doubt. We are of opinion on inde-
pendent grounds, however, that such is the sounder view.
When we recall the forest of poles with their clumsy ap-
purtenances and the net work of wires and even cables
with which some of our city streets are incumbered, it
seems hard to say that an owner whose light is cut off, who
has the safety of his buildings and their occupants in case
of fire endangered, and access to his property impeded by
these permanent obstructions, is less entitled to complain
than one whose easement by adjacency is impaired by a
steam railway. Of course, in the greater number of cases
the poles and wires work no substantial injury, and the
owner has no ground of objection. But because the dam-
age in most cases is trivial or nominal, we should not be
blind to the substantial and considerable damage that
often exists.

It does not follow, however, that the plaintiff is en-
titled to an injunction. In case property is not taken or
injured directly, so as to dispossess or otherwise immedi-
ately disturb the owner, but he suffers some injury in an
incidental right growing out of his peculiar situation or
position, so that ordinary condemnation proceedings and
payment of damages in advance are not practicable, the
owner should be left to his remedy at law, which in such
event is entirely adequate, and is not entitled to an in-
junction unless upon proof of insolvency or some special
circumstance. Such is the practice in cases where the con-
struction of a railway causes damage to abutting owners.
The abutting owners are not made parties to condemna-
tion proceedings, nor can they enjoin construction of the
road; but their remedy is in an action at law for damages.
*Republican V. R. Co. v. Fellers,* 16 Nebr., 169; *Chicago,
K. & N. R. Co. v. Hazels,* 26 Nebr., 364, 368, 370; *Atchison
& N. R. Co. v. Boerner,* 34 Nebr., 240. The same remedy
is employed where a city, in improving a street, impairs
the easement of the abutting owner. *City of Omaha v.*

*Flood,* 57 Nebr., 124. And it was adopted in *Jaynes v. Omaha St. R. Co., supra.* To hold otherwise would probably prevent many useful public improvements, since the legislature has never made provision for condemnation of rights incidentally affected. Where nothing is actually taken, and there is merely an injury to the rights which the abutting owner has by reason of his situation, the courts generally refuse to grant an injunction in the absence of some special circumstances. *Lorie v. North Chicago City R. Co.,* 32 Fed. Rep., 270, and cases cited; *Maxwell v. Central District & Printing Telegraph Co.,* 41 S. E. Rep. [W. Va.], 125. In the case at bar, we see no reason why damages will not afford an adequate remedy. We do not think public utilities of this kind ought to be suspended until every abutting owner upon the streets or highways to be used has been duly appeased. If he has been substantially or appreciably injured, an action at law will ordinarily afford him full compensation. If he has not, no opportunity for extorting an unreasonable settlement should be afforded him.

The petition alleges that the franchise under which the defendant is operating was granted by the city council to the mayor and one of the councilmen, by whom it was transferred to the company; and for this reason it is claimed that the grant is against public policy, fraudulent and void. If the franchise was wholly void, so that injury to plaintiff's property was threatened by mutilation of her trees without any warrant of law and by mere trespassers, a case for an injunction might be presented. But the most that can be said under the allegations of the petition is that the circumstances might possibly afford ground for revocation or for ousting the company in a direct proceeding for that purpose. The company is possessed of the franchise. Whether the franchise was acquired or is held rightfully is to be determined only in a direct proceeding to oust the company or in a proceeding to which some one who claims a better title is a party. 4 Thompson, Corporations, sec. 5340.

We therefore recommend that the decree be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Eminent Domain.—Condemnation.—Compensation.—Franchise.—Corporation Tenant of the State.—Telephone Company.—Irreparable Injury.—Injunction.—Quo Warranto.*

Eminent domain is the power of the state to apply private property to public purposes on payment of just compensation to the owner. *Charles River Bridge v. Warren Bridge,* 11 Peters [U. S.], 419, 641. It is an incident to sovereignty. *United States v. Jones,* 109 U. S., 513.

The liability to make compensation for private property taken for public uses, is a constitutional limitation of the right of eminent domain. *United States v. Jones,* 109 U. S., 513.

Joseph Bonaparte—ex-king of Naples and of Spain and elder brother of the great Napoleon—came to the United States in the month following the defeat at Waterloo, where he remained continuously for seventeen years. By a special act of the legislature of New Jersey he was enabled to hold land in the state; and he purchased two thousand acres adjoining Bordentown, upon which he placed $300,000 in improvements. In 1830 a railroad company incorporated, by an act of the assembly of the state, for building a line from Camden to Amboy, made a survey through the premises of Bonaparte. The latter commenced a proceeding in injunction, alleging, *inter alia,* that, by reason of the premises, he would suffer great and irreparable injury. The company answered, among other things, that the route through the complainant's land was the most practicable; that, in fact, no other route could be chosen without an additional expense of $100,000. The man who was defeated at Vittoria, conquered in this lawsuit, and the lawsuit was an epoch-maker, the most far-reaching historic event in the checkered career of Joseph Bonaparte. Railroading was then in its infancy; and, consequently, the case became a precedent. It was therein decided (1) that an alien resident in New Jersey, who holds land under a special law of that state, may maintain a suit in the circuit [federal] court relating to such land; (2) that an act incorporating a railroad company, providing for the assessment of damages for land through which it passes, is not unconstitutional; (3) that the right to take private property for public use, is an incident to all governments; (4) but that the obligation to make compensation is concomitant; (5) that a law divesting vested rights is not, *ipso facto,* void, but is so if the right is by contract, and compensation is not provided for; (6) that the constitutional provision protecting property against

arbitrary seizure and divesture, does not apply to. legal procedure where compensation is given; (7) that the constitutional right to a trial by jury applies only to criminal cases, and civil cases where a right is to be tried at law—not to a mere collateral question of damages, no suit pending, where the right of each party is beyond dispute; (8) that the law can not authorize the taking of private property for private use; (9) that a road, canal and the likes of that are for public use when the public have a right of passage on paying a stipulated, reasonable and uniform toll, whether the road or canal or what-not is constructed by the state or a corporation; (10) that if the toll amounts to a prohibition, it is a monopoly and the road or canal or what-not is not public; (11) that the law is not void because it makes no provision for compensation or provides no ' method for ascertaining it; (12) that the provision last named can be made by a subsequent law; (13) that the execution of the law will be enjoined till such provision is made and the compensation paid; (14) that the payment must be simultaneous with the disseizin of the owner, and the appropriation of his property; (15) but that if the compensation is ascertained, the payment certain, the security undoubted and the means of collection summary, the construction of the road may be begun before actual payment. The case was held proper for injunction. Opinion by Baldwin, J., *Bonaparte v. Camden & A. R. Co.*, Baldwin [U. S. C. C.], 205. The writer has not been able to find a mention of the foregoing case in any biography of Joseph Bonaparte. Of such stuff is history made.

The foregoing case and others like it proceed on the theory that anciently a franchise was a part of the royal prerogative, granted by royal favor to the subject; that the state, under our system of government, takes the place of the king; that, with the royal grant, goes the right of eminent domain; that the railroad company in its occupancy is the mere tenant of the state.

For distinctions between injunction and quo warranto, see High, Injunctions, and High, Extraordinary Legal Remedies. As to the right of eminent domain in connection with telephone companies and as to their being common carriers of oral messages, see Cobbey's Annotated Statutes of Nebraska, vol. II., p. 3276, secs. 11464, 11465 and notes.—W. F. B.