McCook IRRIGATION & WATER POWER COMPANY, APPELLEE,
v. CHARLES G. CREWS ET AL., APPELLANTS.*

FILED OCTOBER 7, 1903.    No. 12,076.

1. **Riparian Owner: USE OF WATER.** A riparian owner has a right to make a reasonable use of a stream flowing over or along his lands for the purposes of irrigation.

2. ————: ————. This right is to be measured primarily by the amount of water in the stream available for such purposes, the number of persons who may so use it, the size, situation and character of the stream, and the nature of the region.

3. ————: INJURY TO RIGHTS. In case a reasonable use of the water,

* Rehearing allowed. See opinion, p. 115, *post.*

consistent with a like use by other riparian owners, can not be made, the injury to a riparian owner by reason of appropriation of the water by an irrigation enterprise is nominal only.

4. ———: ———: REMEDY. · A lower riparian owner can not enjoin an irrigation enterprise by an upper appropriator under the statutes, merely because his damages for injury to his riparian rights have not been paid; his remedy is to sue at law for such damages.

5. Equitable Relief: DAMAGES. But in case a lower appropriator under the statute is materially affected by diversions of water by upper riparian owners, he may bring a suit in equity to · determine the rights of all claimants to use of the water and to quiet his title thereto, in which the damages to riparian rights may be ascertained and due compensation awarded.

6. ———: PLAINTIFF MUST DO EQUITY. The lower appropriator may not maintain such a suit against upper riparian owners, without offering to do equity by paying whatever damages accrue to such owners by reason of the appropriation.

7. Damages: PRESUMPTION. It will not be presumed that the damages in such case are nominal only.

8. Remand: AMENDMENT: NEW PARTIES. In furtherance of justice, where a decree is reversed, this court may remand the cause with leave to amend the petition and bring in new parties, instead of requiring the expense of a new suit.

APPEAL from the district court for Hitchcock county: GEORGE W. NORRIS, JUDGE. *Reversed.*

*Webster S. Morlan,* for appellants.

*Fayette I. Foss* and *L. H. Blackledge, contra.*

POUND, C.

The plaintiff is operating an irrigation ditch, taking water from the Republican river as appropriator. The defendants are riparian owners upon the Frenchman, a principal tributary of the Republican river immediately above the plaintiff's canal, and claim a right to irrigate their lands with the water of said stream, both by virtue of their riparian rights and under subsequent appropriations. With the latter we have no concern. This suit is brought to enjoin the defendants from diverting water

necessary to the conduct and operation of the plaintiff's ditch, and claimed by the plaintiff by virtue of its priority. The trial court granted an injunction, and the defendants appeal.

The principles by which this cause must be governed have been settled substantially in the two prior cases of *Crawford Co. v. Hathaway,* 67 Neb. 325, and *Meng v. Coffee,* 67 Neb. 500, in which the several questions involved are discussed exhaustively. The defendants as riparian owners have a right to make a reasonable use of the stream for the purpose of irrigation. *Meng v. Coffee, supra.* And this right is property, entitled to protection, as such, the same as property rights generally, and is within the purview of the provisions of the constitution prohibiting taking of or damage to private property for public use without due compensation. *Crawford Co. v. Hathaway, supra.* The injury to the rights of a riparian owner in such cases may be nominal only, or may be substantial, depending, in each case, upon a number of circumstances. In general, the right is to be measured primarily by the amount of water in the stream available for irrigation or other proper uses, the number of persons who may so use it, the size, situation and character of the stream, and the nature of the region. The purpose of the common law doctrine on this subject is to secure equality of use by riparian owners, as near as may be, to each, by requiring each to exercise his rights reasonably, and with due regard to the right of other riparian owners to apply the water to the same or other purposes. *Meng v. Coffee, supra.* The right of the riparian owner, therefore, is neither a right to have every drop of the water flow past his land, on the one hand, nor, on the other, to abstract such quantities as he may deem necessary and proper for use upon his own land, to the injury of others who may desire to use the water, also. It is simply a right to be permitted to enjoy, and to make a reasonable use of, the water, consistent with like use by all other riparian owners. In *Crawford Co. v. Hathaway,*

HOLCOMB, J., suggested, and we entirely concur, that the extent of land with reference to which riparian rights may be claimed can not exceed the area acquired by a single entry or purchase from the government, and he was inclined to hold that such area should be restricted to forty acres or, in case of irregular tracts, a designated numbered lot in the government survey. This is not to be taken, however, as meaning that every riparian owner may claim the benefit of the stream for the purposes of a tract of that size in every case. It is to be taken as a limitation of the reasonable use permitted by law rather than as defining it. In case the size of the stream, the amount of water therein, and the number of riparian owners who may make use thereof are such that the irrigation of five acres, for example, would be an unreasonable use, the riparian owner would not be permitted to use the water to that extent in derogation of the rights of other riparian owners, and, in consequence, could not claim damages as against an appropriator upon that basis. Two elements are to be considered; the amount of water in the stream and the extent of the riparian land. Unless and until there is sufficient water to permit use with reference to an entire tract acquired by the single entry or purchase from the government, the latter does not become material. In consequence, if a reasonable use of the water consistent with a like use by other riparian owners can not be made in a particular case, the injury to the riparian owner by reason of appropriation of the water by an irrigation enterprise is nominal only.

An important distinction must be made between an injunction suit brought by a lower riparian owner against an upper appropriator and a suit against upper riparian owners by a lower appropriator. In *Crawford Co. v. Hathaway, supra,* it was held that a riparian proprietor might recover damages for injury to his riparian rights by appropriation under the statute, in the same way and subject to the same rules as a person whose property is affected injuriously by the construction of a railroad. In

McCook Irrigation & Water Power Co. v. Crews.

that case a comparison was made between injury to riparian rights by appropriations and injury to abutting property resulting from obstruction of streets and highways by the construction and operation of railways. It is well settled that the remedy of the abutting owner, in such cases, is to sue at law for his damages. The same conclusion was reached, with respect to injuries to abutting property resulting from the obstruction of streets and highways by poles and wires, in *Bronson v. Albion Telephone Co.*, 67 Neb. 111. In that case it was laid down as a general rule that "in case property is not taken directly by a public undertaking, but an owner suffers some injury in an incidental right growing out of his peculiar situation or position, so that ordinary condemnation proceedings and payment of damages in advance are not practicable, the owner will be left to his remedy at law, and is not entitled to an injunction unless upon proof of insolvency or some other special circumstance." This principle is clearly applicable to the instance under consideration. It follows that the lower riparian owner can not enjoin an irrigation enterprise by an upper appropriator under the statutes, merely because his damages for injury to his riparian rights have not been paid. His remedy is to sue at law for such damages. A different principle, however, comes into play with respect to suits by lower appropriators against upper riparian owners. Undoubtedly the upper owner, who will be deprived of the right to use water upon his riparian lands by reason of an appropriation requiring that all the water pass into the ditch or canal of the appropriator, may maintain an action at law to recover his damages. But in case he does not see fit to do so and diverts water for use upon his riparian lands so as to affect materially the lower appropriator, the latter may bring a suit in equity to determine the rights of all claimants to use of the water and to quiet his title thereto, in which the damages to riparian rights may be ascertained and due compensation awarded. *Crawford Co. v. Hathaway, supra,* was such a case.

Where it becomes necessary for the lower appropriator to go into equity to protect his appropriation as against riparian owners whose damages have not been paid, it is obvious that he ought not to be permitted to maintain his suit without offering to do equity by .paying whatever damages have accrued to riparian rights by reason of the appropriation. Coming into equity, he must do equity, and can not put the riparian owners to the trouble and expense of actions at law for their damages. Nor can it be presumed that the damages in such case are nominal only. The right is a well recognized and substantial one, which may be, in particular cases, very valuable. A plaintiff who interferes with or takes away this right ought to be willing, when he comes into equity, to submit the nature and amount of the injury to adjudication and to pay such damages as may be awarded.

In view of these principles, we think the decree must be reversed. It does not provide in any way for proper compensation to the defendants for damages to their riparian rights, if any they have suffered, nor is there any provision for ascertainment thereof. But, as there must clearly be further litigation between the parties in order to settle the present controversy, we do not think it advisable to dismiss the cause. In furtherance of justice, where a decree is reversed, this court may remand the cause with leave to amend the petition and bring in new parties, instead of requiring the expense of a new suit. *Hoagland v. Van Etten,* 23 Neb. 462, 31 Neb. 292. We think the cause should be remanded with leave to the plaintiff to amend its petition and bring in new parties, if so advised, to the end that its title may be quieted, the damages, if any, to upper riparian owners by reason of its appropriation determined and awarded, and all matters in dispute completely adjudicated in the one proceeding. And we so recommend.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, the judgment of the district court is reversed and the cause is remanded for further proceedings, with leave to the plaintiff to amend its petition and to make new parties defendant, if so advised.

REVERSED.

The following opinion on rehearing was filed January 18, 1905. *Judgment of reversal vacated. Judgment of district court affirmed:*

1. **Appeal:** ISSUES. Ordinarily, a case on appeal will be tried and determined in the appellate court upon the same issues raised by the pleadings and the evidence as were presented in the trial of the case in the court in which it originated.

2. **Irrigation:** USE OF WATERS. It is the policy of the law to regulate the diversion and use of the waters flowing in the streams of the state for the irrigation of lands by a uniform system applying alike to all waters thus diverted; and the law of appropriation, as defined by the statute and administered by the state board of irrigation, is deemed an effective means to accomplish the desired results.

3. **Damages.** Where an appropriator of water for purposes of irrigation has acquired a vested right under the law to the use thereof for such purposes, a riparian owner on the same stream can not enhance the damages he has sustained, if any, to his riparian estate by, subsequently to the appropriation thus acquired, constructing irrigating ditches to irrigate his riparian lands under his common law right to a reasonable use of the water of such stream for such purpose.

4. **Injunction.** Where an appropriator has acquired a valid right to the use of water under the laws governing the taking and use of water for purposes of irrigation, the right is in its nature property and entitled to be protected as such, and for any invasion of, or injury to, the same the law will afford a remedy. And in such a case, equity will restrain an upper riparian owner from subsequently diverting water, the right to use which had been thus acquired, without requiring the appropriator to institute proceedings to condemn the rights under the common law of all riparian owners to the reasonable use of water flowing in the stream for irrigating riparian lands.

5. **Statutory Rights:** ACTION. Where an appropriator has acquired a valid right to the use of water under the irrigation laws of the state, and is in the actual use of such water for purposes of irrigation, the right thus acquired is superior to that of a riparian

owner to a reasonable use of the water of the stream under the common law, to irrigate riparian lands, and, for the taking or impairment of the latter's right, an action is maintainable if any damages have been suffered by the owners of the riparian estates.

6. **Rights Under Act of 1895:** REMEDY. The irrigation act of 1895 authorizes and regulates the appropriation of the waters of the state for irrigation and other purposes which are declared to be a public use; and, in making appropriations of water as contemplated by the act, a riparian owner whose property rights are appropriated or impaired is entitled to compensation for the injuries actually sustained, to be recovered in a suitable action or proceeding instituted for that purpose. *Crawford Co. v. Hathaway*, 67 Neb. 325.

7. **Right of Eminent Domain.** Under the constitution and statutes of this state, condemnation is authorized of the right of the private riparian proprietor to the use and enjoyment of a natural stream flowing past his lands, or its impairment by an appropriation of such water for irrigation purposes, and such riparian proprietor may recover damages in the same way and subject to the same rules as a person whose property is affected injuriously by the construction and operation of a railroad. *Crawford Co. v. Hathaway*, 67 Neb. 325.

8. **Statute Constitutional.** The statute governing the subject of the appropriation of water flowing in the streams, for the purposes of irrigation, is constitutional.

9. **Estoppel.** *Held*, That the plaintiff is not estopped from asserting its superior right to the use of the water in controversy for purposes of irrigation.

HOLCOMB, C. J.

In this case, a controversy has arisen between an appropriator of water for irrigation purposes, who has acquired a vested right to the use of the water appropriated, and upper riparian owners on the same stream who, subsequent to the appropriation, have sought and now seek to divert and use the water of such stream for the purposes of irrigating their riparian lands. The appropriator, appellee here, brought an injunction suit for the purpose of restraining the appellants, defendants in the action, from diverting the water of the stream to their riparian lands for irrigation purposes, when such diversion deprived the appropriator of the amount of water it was entitled to

under its appropriation right, which had been regularly adjudicated, established, and confirmed by the state board of irrigation. In the opinion heretofore handed down, *ante,* p. 109, it is held that the plaintiff appropriator could properly bring a suit in equity to determine the rights of all claimants to the use of the water of the stream, and to quiet its title thereto, and in which damages to riparian rights might be ascertained and due compensation awarded. Such an appropriator, however, could not, it is held, maintain such a suit against upper riparian owners, without offering to do equity by paying whatever damages accrued to such owners by reason of its appropriation. It is insisted on this rehearing that the real question presented by the record has been overlooked, and that the principal proposition of law to be determined is, whether riparian owners, after water has been appropriated and applied to the irrigation of non-riparian lands under the irrigation laws of the state, can go into the irrigation business, construct ditches for the purpose of distributing water over the land of riparian owners and, thereby, wholly deprive the prior appropriator of the water to which he is entitled under his appropriation. The case was tried in the court below upon the pleadings and a stipulation of facts. It is by the record, as thus made up, clearly disclosed that the right of the appropriator, the plaintiff in the action, and appellee here, is prior in time to the defendants, appellants, in so far as the question is affected by the actual appropriation by them of the water in the stream, by its diversion into ditches for the purpose of irrigating their riparian lands. It is stipulated that "subsequent to and not before the completion of plaintiff's said ditch, they (defendants) have claimed that they desired to divert the waters of said stream for the purpose of irrigating riparian lands, owned by them, * * * and have, by reason of the dam and ditches hereinbefore mentioned, diverted and are about to divert a large portion of the waters which would naturally flow down to and into the plaintiff's said ditch, and be applied to the irrigation of agricultural lands there-

under; but the defendants are diverting and appropriating such waters to the irrigation of riparian lands owned by them and others as follows." Then follow the names of the owners and the number of acres of riparian lands of each sought to be irrigated and continues: "Thereby depriving the plaintiff of water to irrigate crops planted and growing on lands under plaintiff's ditch; if defendants are allowed to divert the water as they have been and are threatening to do, the crops planted and growing on lands served by the plaintiff's ditch will be greatly injured on account of extremely dry weather which prevails during the summer of each year in the vicinity of the location of said ditch. The defendants threaten to and are about to divert all the waters flowing down said Republican river that would reach and come to the head-gates of plaintiff's ditch during the dry season of the year."

As to the right of a riparian owner to a reasonable use of the water of a stream running over or by his riparian land, the question has been so thoroughly and exhaustively considered in the former opinion filed in this case and in the case of *Meng v. Coffee*, 67 Neb. 500, that nothing can be added thereto. This right has been, in these opinions, stated with clearness and succinctness, and with the doctrine, as thus announced, we are quite well satisfied. The question in this case, however, which it is proposed to further consider, relates more to the remedial rights of the parties to the controversy than to a determination of the substantive rights or interests in property of which they may be possessed. The former opinion recognizes the property rights of the riparian owners and the right of the appropriator to the use of the water called for by his appropriation, and that the latter's right is superior, in the sense that the former is subject to be taken and condemned for the purpose of appropriating the water for the irrigation of lands, whether riparian or non-riparian, which by law is declared to be a public use.

1. The only issues presented, tried and determined in the trial court, were with respect to the relative rights of

the plaintiff and of the defendants to divert and have the use of, as against the other, the water claimed by the plaintiff under its appropriation. The question for adjudication in the last analysis and that which was decided, touches the superiority of right as between the litigants to the use of the water in controversy. No question of damage to the defendants' riparian estates was raised or considered, except that it was stipulated, that no compensation had been made by the appropriator to the owners of riparian lands who were made defendants in the action. The question of compensation for damages, if any, to upper riparian owners by the defendants' appropriation, therefore, is to be considered only as going to the statement of a cause of action by the plaintiff and of its right, in equity, to the relief prayed for, that is, to restrain the defendants from diverting the water to which plaintiff was entitled under its prior appropriation. The rule is, we think, as it should be, that ordinarily a case on appeal will be tried and determined in the appellate court upon the same issues, pleadings and evidence as were presented in the trial of the case in the court in which it originated. *Cobbey v. Buchanan*, 48 Neb. 391; *Hyde v. Hyde*, 60 Neb. 502. We are, therefore, in this case, to determine whether equity will protect the plaintiff, as an appropriator, in his acquired right to the use of the water for irrigation as against the upper riparian owners who, subsequent to the appropriation, seek to divert it, to irrigate riparian lands. It is unnecessary to determine, whether the action might not have been brought for the purpose of condemning the riparian estates, above or below the point of diversion, necessarily taken or injured in the prosecution of the irrigation enterprise, or, whether the defendants in the action might not have presented an issue concerning the damage sustained by the appropriation of the plaintiff, and had the same adjudicated in the action and compensation awarded, as a measure of relief they were entitled to on the final disposition of the cause. The plaintiff's right to the appropriation having been duly established and adjudicated

by the state board of irrigation, this right, it would seem, would be protected by the courts in any litigation where the question arose, and an action in the nature of one to quiet title would be unnecessary.

2. It is obviously the policy of the law governing the subject of irrigation, to regulate the diversion and use of the waters, flowing in the streams of the state, for the irrigation of lands, by a uniform system, applying alike to all waters thus diverted, and the law of appropriation, as defined by the statutes and administered by the state board of irrigation, is deemed an efficient means to accomplish the desired results. This is made manifest by a very cursory examination of the irrigation act and by the provisions found therein for the taking and condemnation of the private rights belonging to riparian owners. The water of every natural stream, not heretofore appropriated, declares the law, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriations as hereinbefore provided. The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied, and priority of appropriation shall give the better right as between those using waters for the same purpose. Canals constructed for irrigation are declared to be works of internal improvement, and that the laws relating to works of internal improvement shall be applicable to canals constructed for irrigation. It is also declared that nothing in the irrigation act shall be so construed as to interfere with or impair the rights to water appropriated and acquired prior to the passage of the act. It is reasonably clear that the law of irrigation is not specially concerned regarding a plan and method for the taking and distribution of water for irrigation among riparian owners. This right is defined, limited and controlled by the common law. Of course, the right is recognized and the law will guard and protect such rights, as all other property rights are guarded and protected. The irrigation act contemplates a code or system which will, in a legal and orderly manner, provide for the ap-

propriation, distribution and application of the waters of streams diverted for purposes of irrigation to the end that all entitled to such rights may enjoy its benefits, and, for an infringement of which, redress will be granted. This does not mean that a riparian owner's right to the use of water for irrigation purposes is to be destroyed, but only that it is the intent of the law that the private right shall be subordinated and, when required for public use, taken under the law of eminent domain, and, for which, the owner of the riparian estate whose property is taken or injured is entitled to due compensation to be awarded in any suitable action.

3. In the case at bar, under the facts as disclosed by the record, it is to be observed that the plaintiff has a vested right to the use of the water for irrigation, which it is claimed is being wrongfully diverted by the defendants. The defendants had made no diversion of the water for the irrigation of their riparian lands, and no attempted diversion, until long after the plaintiff's rights as an appropriator had attached and become fixed under the irrigation act. As the record is made up, the defendants are claiming the right to divert all of the water of the stream adjacent to their riparian lands, to irrigate such lands, whenever the volume of the water flowing therein is below the amount thus required. The right thus claimed to the use of such water is manifestly in excess of their rights as riparian owners, as defined in the former opinion and in the other case cited. Although the defendants now claim solely as riparian owners, there is much in the record warranting the inference that the improvement was begun with the view of appropriating the water for irrigation under the law as then existing, rather than the use of it under rights as riparian owners. There is nothing in the record from which it may be determined what is a reasonable use of the water for irrigation, which belongs to the defendants as riparian owners, the extent of such right being always a question of fact to be determined from the evidence in a given case. As riparian owners, they, of

course, can not be permitted to divert all the waters of the stream as it is stipulated they were doing and threatening to do, nor can they be permitted to use for irrigation purposes on their riparian lands more than a reasonable amount of the water flowing in the stream at the time, due regard being had for a like reasonable use of such water by all riparian owners along such stream. The injunction is sought only to restrain the defendants from diverting water appropriated by the plaintiff, which diversion was attempted long subsequently to the time the plaintiff had made a legal appropriation of the water it now claims the right to the use of. The injunction does not seek to deprive defendants of any rights belonging to them as riparian owners, as existing at the time of plaintiff's appropriation. They are in nowise sought to be restrained of their usufructuary estate as riparian owners, of which they were possessed and were using when plaintiff's rights accrued. While they, at that time, were possessed of the naked legal right to a reasonable use of the water as riparian owners, yet such right was not coupled with an actual diversion or application of such water to irrigate riparian lands. The volume of water flowing past their lands was to remain undisturbed by the injunction, and their use of it as such owners, as then enjoyed, was not to be interfered with. The riparian owner, as it appears to us, could not, by the application of any sound principle of law, be permitted to enhance his damages and be entitled to greater compensation, by reason of his added expenditures in the construction of ditches for irrigation of riparian lands subsequently to the time of the appropriation by either a lower or upper appropriator on the same stream of water. The defendants, in the case at bar, constructed their ditches with full knowledge of the plaintiff's superior rights as an appropriator, and in equity and good conscience ought not to be permitted to add this increased expense to the compensation to which they might be found entitled as riparian owners for damages to their riparian estate. If

this were a case where the riparian owner had actually
diverted water to irrigate riparian lands before the rights
of an appropriator attached, the case presented would be
entirely different, and it could hardly be doubted that the
appropriator would, in equity, be compelled to make due
compensation before a court would restrain the further
diversion to and use of such waters by such riparian
owner.

4. As the case stands, the plaintiff as an appropriator
has acquired a vested right in and to the use of the water
appropriated by it under the laws of the state governing
the taking and use of water for purposes of irrigation.
This right is in its nature property and entitled to be
protected as such. The defendants are interfering with
the right thus acquired to the use of the water, by divert-
ing it to irrigate their riparian lands. The claim that
their rights as riparian owners, to the use of such water
for irrigation, are superior to those of the plaintiff is not
well taken. The plaintiff's right under its appropriation
has ripened into a legal estate; and, for any invasion of or
injury to the same, the law will afford a remedy. Whether
the defendants have suffered any substantial damages to
their riparian estates by reason of their being denied the
reasonable use of the water of the stream, when such use
interferes with plaintiff's appropriation, is problematical
and must depend upon the state of proof, when that ques-
tion is under investigation and consideration. This right
may prove to be so infinitesimal that the law would not
take note of it. The damages may be nominal only.
Whether the right to damages in such a case, if it exists,
is to be claimed and enforced, must, we think, in a large
measure, rest with the riparian owner where lands have
thus been injuriously affected. Under such circum-
stances, it does not seem inequitable to remand the ri-
parian owner to his remedy by an action at law for the
recovery of whatever damages he has sustained by reason
of such appropriation. Nor does it seem that the prin-
ciple, that he who seeks equity must do equity, would

apply in a case of this kind, and compel an appropriator to institute proceedings to condemn all upper riparian owners' rights to the reasonable use of water flowing in the stream for irrigation under the common law, before his right of appropriation is protected from invasion by such upper riparian owners. The case at bar is to be distin-guished from one where the action is brought for the purpose of adjudicating and establishing conflicting water rights and determining the priorities thereof. The plaintiff's right is already adjudicated and established; and it is sought by this action only to restrain an alleged wrongful interference therewith.

5. The plaintiff as an appropriator had, before the diversion of water by the defendants which is complained of, perfected its right to the use of the water it claims under the irrigation laws of the state. Its property rights by virtue thereof had been taken possession of and were being used in the prosecution of its business as an irrigation company. The water by means of its irrigating ditches was, under its appropriation, being taken from the stream and was being applied to the irrigation of the soil for the benefit of those engaged in agricultural pursuits. It was, at the time the defendants were doing and threatening to do the acts complained of, in the peaceful possession and quiet enjoyment of its property and conducting the business of irrigation for which it was organized. In its appropriation of the water of the stream for the purpose of irrigation and the acquirement of the right to the use thereof, it had, in legal contemplation, effected a taking of the upper and lower riparian owners' rights to a reasonable use of the water of such stream to irrigate riparian lands. No compensation, it is true, had been awarded for possible damages. An upper riparian owner, as well as the lower, could, doubtless, maintain an action for the injury, if any, of a substantial character, suffered to his riparian estate by reason of the appropriation. The appropriator having acquired a vested right to the use of so much water flowing in the stream, this right to use to that

extent would be an impairment of the upper riparian own-
er's right to divert the same water, and have a reasonable
use thereof to irrigate his riparian lands, to which he is
entitled under the doctrine of the common law.

6. In the case of *Crawford Co. v. Hathaway,* 67 Neb.
325, 60 L. R. A. 889, where the subject of the law of ir-
rigation as it exists in this state is considered at some
length, it is held:

"The irrigation act of 1895 authorizes and regulates the
appropriation of the waters of the state for irrigation and
other purposes which are declared to be a public use; and
in making appropriations of water as contemplated by the
act, a riparian owner whose property rights are appro-
priated or impaired is entitled to compensation for the
injuries actually sustained, to be recovered in a suitable
action or proceeding instituted for that purpose."

In the same case, this further rule relating to the ques-
tion was stated substantially as follows: That under the
constitution and statutes relating to the subject of emi-
nent domain, condemnation is authorized, of the right of
the private riparian proprietor to the use and enjoyment
of a natural stream flowing past his lands or its impair-
ment by an appropriation of such water for irrigation
purposes, and that such riparian proprietor may recover
damages in the same way, and subject to the same rules,
as a person whose property is affected injuriously by the
construction and operation of a railroad. In the body of
the opinion, it is said:

"In this state, the court has repeatedly held that section
21, article 1, of the state constitution, is of itself a sufficient
basis to justify an action for the recovery of all damages
arising from an exercise of the right of eminent domain
which causes a diminution in the value of the private
property of another. *Chicago, K. & N. R. Co. v. Hazels,* 26
Neb. 364; *Burlington & M. R. R. Co. v. Reinhackle,* 15
Neb. 279, 48 Am. Rep. 342. In the cases cited the question
of damages arose, not for the taking of property, but for
damage to abutting property by railroad companies, re-

sulting from obstructions of streets and highways, and other incidents of their construction and operation of railways, causing a depreciation in the value of abutting property. The right of the property owner to the benefit and advantage of a street and highway adjacent to his land, and the right of the riparian owner to the reasonable use and enjoyment of the water in the flowing stream over or adjoining his land, are not without features rendering them in a measure analogous."

In the opinion first filed in this case in the development of this same doctrine there is cited the case of *Bronson v. Albion Telephone Co.*, 67 Neb. 111, 60 L. R. A. 426. In the latter case, the rule is thus stated:

"In case property is not taken directly by a public undertaking, but an owner suffers some injury in an incidental right growing out of his peculiar situation or position, so that ordinary condemnation proceedings and payment of damages in advance are not practicable, the owner will be left to his remedy at law and is not entitled to an injunction, unless upon proof of insolvency or some other special circumstance."

The doctrine deducible from these several authorities were, in the former opinion, held applicable to lower riparian owners as against an appropriator, but not to upper riparian owners. Viewing the subject in its practical workings, and bearing in mind that we are dealing with a state of facts disclosing that the upper riparian owners were not, in fact, applying and using water to irrigate riparian lands at the time a legal appropriation was made of such water under the law regulating that subject, we are constrained to the view that the principle should be extended to the rights of upper riparian owners thus situated; and that an appropriator, who has acquired a valid right to the use of water for irrigation, may prevent by injunction a subsequent diversion of the water, even as against a riparian owner, without being required to commence an action to condemn and make compensation to all upper riparian owners who may, possibly, have suffered

damage to their riparian estates, because of their being deprived of the right to divert and have a reasonable use of such water to irrigate riparian lands by reason of the prior appropriation. Under the facts in this case, as disclosed by the record, the order of injunction entered by the trial court is, we are of the opinion, right and should be affirmed. This, of course, without prejudice to the rights of the defendant to recover damages if any have been sustained.

7. The constitutionality of the irrigation act is challenged, but as its validity has been upheld and recognized repeatedly in the prior decisions of the court, the question does not, it would seem, require further consideration at this time.

8. It is also argued that the plaintiff is estopped to deny that the defendants have a better right to the use of the water in controversy, because of it having, without objection, permitted the defendant to go to the expense of constructing the irrigating ditches necessary to irrigate their riparian lands. As heretofore indicated, the inference is warranted that the defendants were seeking to obtain a right to the use of the water as appropriators under the law as then existing, subject, of course, to the plaintiff's prior right. This of itself, we think, disposes of the question of estoppel. Aside from the consideration mentioned, there are essential elements of estoppel, the proof of which is wholly wanting, and this defense must, for these reasons also, fail. The judgment of reversal heretofore entered is vacated and the order of the district court granting a perpetual injunction is

AFFIRMED.