COURT HOUSE ROCK IRRIGATION COMPANY, APPELLANT, V. WILLIAM M. WILLARD ET AL., APPELLEES.

FILED JANUARY 3, 1906. No. 13,990.

Irrigation: INJUNCTION. Where the evidence shows that an appropriator of water does not beneficially use the amount which it has diverted into its canal by reason of wastage and seepage caused by defective maintenance, and there is enough water in the stream, if economically used, to supply both the complainant and certain riparian owners taking water for irrigation purposes above the point of diversion, the appropriator is not entitled to an injunction to prevent the use of the water by such owners.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. Affirmed.

William P. Miles, James L. McIntosh and Hamer & Hamer, for appellant.

Le Roy Martin, H. S. Crane and Wilcox & Halligan, contra.

LETTON, C.

The Court House Rock Irrigation Company, plaintiff, owns an irrigating canal and is entitled to so much of an appropriation of $30\frac{1}{2}$ cubic feet of water as it can beneficially use from the waters of Pumpkin Seed creek, in Cheyenne county. The defendants are riparian owners whose lands lie above the dam and point of diversion of the plaintiff's canal. In 1902 the defendants constructed a dam and a canal upon their lands for the purpose of diverting the waters of the creek to irrigate their own land, claiming the right to do so as riparian owners and subsequent appropriators. On May 21, 1903, this action was brought by the Court House Rock Irrigation Company to enjoin the defendants from diverting the waters of the creek into this canal, or from obstructing their natural flow. A temporary injunction was allowed, which was dissolved at the final hearing and the cause dismissed, from which judgment the Court House Rock Irrigation Company appeals.

Several defenses are made to the action, but the principles announced in *McCook Irrigation Co. v. Crews,* 70 Neb. 115, the opinion in which has been handed down during the pendency of this action, dispose of most of them adversely to the defendants' contentions. At the oral argument it was stated that the defense mainly relied upon is that plaintiff's bill is without equity, for the reason that the plaintiffs were not, at the time the injunction was prayed, making a beneficial use of all the water they were taking; that they were taking all that was necessary to apply to the lands actually irrigated, but that they were largely wasting it through defects and leaks in the canal, and that the action of the defendants therefore was of no damage to them. The point at issue then is a question of fact, and has necessitated a close examination of the testimony.

The plaintiff, at the time the priorities of right were determined by the state board under the act of 1895, was

found to be entitled to an appropriation of 30½ cubic feet a second, but the testimony shows that the water flowing in the creek has never been of sufficient volume to furnish such a quantity of water during the irrigation season. The evidence shows that Pumpkin Seed creek is largely fed by springs, and that above the point where the stream crosses the west line of defendant Dugger's land, its waters, during the irrigating season, are largely diverted and consumed by upper irrigators, and that the water used by the plaintiff mainly finds its source in springs upon the banks and in the stream as it passes through the defendants' lands. The weight of evidence is to the effect that, during the years 1902 and 1903, the plaintiffs irrigated about 200 acres of land. In 1902 the defendants' dam and ditch were completed only a short time before the close of the irrigating season, and a very small tract was irrigated by them, and in 1903, at the time the injunction was allowed, they had 74 acres of land which were susceptible of irrigation. Mr. R. H. Willits, an under-assistant secretary of the state board of irrigation, testified that it was his official duty to make measurements of the streams within this state; that he had measured the flow of water in Pumpkin Seed creek and that its average flow at the point of diversion of the plaintiff's canal was between nine and ten cubic feet a second of time; that on May 30, 1903, which was a few days after the injunction was allowed, he measured the flow of water in the Court House Rock canal, 800 feet below the point of diversion at the rating flume of the plaintiff, and there was then flowing 7.9 cubic feet a second; that on the same day he measured the flow of water in the canal one mile below the point of diversion, and that there was then flowing 4.11 cubic feet a second, showing a loss of 2.79 cubic feet of water a second in this short distance. He explains that this loss was caused by a heavy seepage and by evaporation, and that the flow of water in the ditch was very much obstructed by weeds and moss. Other testimony shows that the plaintiff's

canal was in such a condition with reference to gopher holes and other leaks, at the time of the beginning of this action, that the water escaped to a considerable extent, in fact, so much so that there was considerable water flowing in the creek below the dam after the entire flow of the stream had been diverted into the plaintiff's canal, and that the same arose largely from seepage and leaks from the canal; and Mr. Willits testifies that on June 17, 1903, at a point 1,000 feet below the present Court House Rock dam, he found 3.6 cubic feet of water flowing in the creek at an old dam site. This water apparently came from seepage from the ditch and from springs.

It is an essential purpose of our irrigation laws to require an economical use of the waters of the state. The plaintiffs have an adjudicated right to the use of $30\frac{1}{2}$ cubic feet of water a second of the waters of Pumpkin Seed creek, so far as they beneficially use the same, but they are not permitted to take water from the stream which they cannot apply to a beneficial use, or, what amounts to the same thing, they are not entitled wastefully to divert water into a canal which is so defective as to waste and dissipate the water, which otherwise might serve a good purpose, if used by other appropriators or riparian owners whose priorities are inferior or subsequent to the rights of the plaintiff. If the evidence showed in this case that the action of the defendants in diverting the waters of the creek resulted in such diminution of the plaintiff's supply that, if the same were carried in a properly constructed and properly maintained canal, the amount of water would fall below that which the plaintiff was entitled under its appropriation to use upon the lands actually irrigated, or which its shareholders are actually prepared to irrigate, it would be entitled to the aid of a court of equity to enjoin such diversion; but if, as in this case, there is sufficient water in the stream which, if carefully and economically used and administered, would allow the defendants the use of a portion of the same to irrigate their lands, and would also furnish

the plaintiffs with sufficient water so that it could apply 1-70 of one cubic foot a second of time to each acre of land to which the water was actually and usefully applied by its shareholders, then no right to injunction would arise. The object of the law is not to encourage waste, but to enforce economy in the use of the waters of the state. Under the method of apportioning the use of the water among the plaintiff's shareholders, it is difficult to determine whether each man used more or less than the statutory amount, and the only definite and reliable data in the record is that furnished by Mr. Willits.

We see no reason, and the learned trial judge saw none, why the defendants should not be permitted to irrigate that portion of their lands to which they seek to apply the water, and the plaintiffs also irrigate all the land under their ditch which they were irrigating at the time this action was begun, if the water in plaintiff's ditch is carefully husbanded and carried without undue loss or waste.

We think the judgment of the district court should be affirmed.

AMES and OLDHAM, C. C., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.