WYANT *v.* CENTRAL TELEPHONE CO.

123    51
e125   169
125    170
f125   172
125    174
125    176

123    51
s81NW 928
s81ASR 155

1. TELEPHONE COMPANIES—COUNTRY HIGHWAYS—TRIMMING TREES FOR WIRING—DAMAGE TO LANDOWNER.

A telephone company, authorized to erect its line along a country highway, has the right to cut away obstructing branches of trees, to admit of the free passage of the wires, without first giving the abutting proprietor an opportunity to do so, but it will be answerable to him for any unnecessary, improper, or excessive cutting.

2. SAME—CITIES AND VILLAGES—STREETS.

Whether, in cities and villages, such companies should use poles sufficiently high to avoid or minimize the damage to shade trees,—*quære.*

Error to Berrien; Coolidge, J. Submitted December 2, 1899. Decided February 20, 1900.

Trespass *quare clausum* by Oscar Wyant against the Central Telephone Company. From a judgment for plaintiff, defendant brings error. Reversed.

*Howard, Roos & Howard,* for appellant.

*Charles E. White,* for appellee.

Hooker, J.   The plaintiff commenced this action before a justice of the peace by summons, requiring defendant to answer a plea of trespass on the case.   The declaration was trespass for breaking and entering plaintiff's close, and cutting and trimming trees growing in the close and in the highway adjacent thereto.   The case was tried at circuit, on appeal, before the court, who filed written findings of fact and law.   The record does not show whether or not a plea was filed.   The finding shows that the defendant's servants, when constructing its telephone line along the highway, trimmed out some branches of trees (some standing within the highway, and some in plaintiff's close), so that the wires might not come in contact with the branches, thereby becoming broken or grounded; that it was done in a reasonable manner, and that no more cutting or trimming was done than was necessary; and that, to do this, its servants took down the road fence, and, with a team and heavily-loaded wagon, drove upon plaintiff's growing wheat "inside [probably meaning "outside"] the highway," and at the same time cut off certain limbs from all of said trees.   The court found, as a conclusion of law, that, while the defendant might place poles in the highway without proceedings for condemnation, it had no right to cut, injure, or mutilate trees, without compensation to the owner for any special damage occasioned thereby.   A judgment for $25 was rendered in favor of the plaintiff, and the defendant has appealed.

It was admitted by plaintiff's counsel that the erection of a telephone line along the highway does not create an additional servitude upon abutting lands, and we need not cite authorities in support of that proposition.   The right being given to erect the poles and wire, the company must of necessity have the right to remove obstructions, as the highway officers have authority to do when engaged in highway work within their jurisdiction.   We may take judicial notice that poles must be set near the sides of the street or road, and that they are generally outside of the

curb or ditch line, and therefore necessarily in line with the trees.   Unless they are to be so high as to clear all of them, the wires must go through the trees.   In cities and villages this may require the removal of large portions of the trees, if they are to go through them, and in such case it is possible that the company should use poles sufficiently high to avoid or minimize the injury to the trees; but that question is not before us under the findings.   The plaintiff cites several authorities in support of his contention.   *Detroit City Railway* v. *Mills*, 85 Mich. 654 (48 N. W. 1007), is referred to, which, in the opinion of Mr. Justice GRANT, says that:

"It may now be considered the well-settled rule that the streets of a city may be used for any purpose which is a necessary public one, and the abutting owner will not be entitled to a new compensation, in the absence of a statute giving it.   *   *   *   So far, then, as these defendants are concerned, it is immaterial whether they or the city own the fee in the street.   Their rights are the same in either case.   So long as they are unobstructed in the use and enjoyment of their property, having convenient ingress and egress, and the use of the street is an authorized and proper public use, they have no legal cause for complaint."

This opinion is concurred in by Mr. Justice LONG, while Mr. Justice CHAMPLIN said that:

" If, in any case, it is such an invasion of private rights as to cause damage to the owner of the fee of the soil or abutting proprietors, I think they have a legal remedy to recover such damage in a suit at law.   And so with regard to the setting of poles to aid the propulsion of cars by electricity.   I do not think, ordinarily, it is such a taking of private property as requires condemnation and compensation before the poles can be set, but I think, if the owner suffers damage on account of the erection of poles, he should seek his remedy at law for such damage."

*Dean* v. *Railway*, 93 Mich. 330 (53 N. W. 396), is cited as implying that, if one of the abutting owners has suffered any special damages, he may have an action at law; but this case does no more than to decide that

the remedy for special injury to property is at law. It affirms the holding of the *Mills Case, supra,* that a new servitude is not created by a street railroad, but does not undertake to decide that a right of action existed.

The case of *Hobart* v. *Railroad Co.,* 27 Wis. 194 (9 Am. Rep. 461), held that:

"The construction and operation of a horse railway in the public streets of a city, by authority from the city government, is not a new burden imposed upon the owners of the fee of the land, and they are not entitled to a compensation therefor, except where some private right of such an owner (as his free access to his own land or buildings) has been materially impaired thereby."

It also held that:

"The owner of a store has no such right to use the street in front thereof, by having drays and wagons, with teams attached, stand transversely upon the street while discharging goods, as will entitle him to recover against a horse-railway company which has so constructed its track (under authority from the city) as to interfere with such use of the street, but he may be compelled, if public convenience requires it, to discharge the goods from wagons or drays standing lengthwise of the street."

The case is not in point. It vindicates the landowner's right of access to the street, and at the same time sustains the paramount right of the public to a proper use of the highway. It is in harmony with the *Mills Case.*

The case of *Tissot* v. *Telephone Co.,* 39 La. Ann. 996 (3 South. 261, 4 Am. St. Rep. 248), is not at variance with the other authorities, as it only sustains a right of action for invading plaintiff's premises, and so cutting branches overhanging the street as to leave an open space, from 25 to 40 feet in circumference, for the purpose of the passing of an almost imperceptible wire, and when the posts and wires could have been, with less or no inconvenience, located elsewhere. *Memphis Bell Telephone Co.* v. *Hunt,* 84 Tenn. 456 (1 S. W. 159, 57 Am. Rep. 237), only holds that there is no right to enter private premises for the purpose of cutting branches. This

is elementary. The case of *Magee* v. *Overshiner,* said to be reported in 64 Am.· P. R. 358, is cited upon the question, but we have been unable to find the case.[1]

None of these cases, unless it be the last mentioned, sustains plaintiff's principal contention, and we think it is not the law in this State. It might well be the law in a State where a telephone is an additional servitude in the absence of condemnatory proceedings.

It is said that the telephone company had no right to cut these branches, without first giving the landowner an opportunity to do so himself. This claim is based on the case of *Clark* v. *Dasso,* 34 Mich. 86, in which it was held that a highway commissioner could not sell trees upon the highway, and intimating that, before he could remove trees that were a public obstruction, he must give the owner the opportunity. The case rested on a statute (1 Comp. Laws 1871, § 1317) which authorized the cutting and removal of trees and shrubs obstructing or injuring a highway, by order of the highway commissioners. Plainly, this case does not come within the statute, because the statute refers only to the cutting down or removal of trees and shrubs, not the trimming of trees; and, again, it is not a statute that purports to impose a duty upon commissioners, but was intended to exempt them from the penalty prescribed by statute, recognizing the possible necessity of removing trees in highways. Moreover, we do not discover that this statute is still in force, except in a modified form. 2 Comp. Laws 1897, § 4159. If the telephone company has the right to have the branches cut, to admit stringing and operating its wires, the legislature has committed to no one, unless it be the company, the authority to do this. No one could do this satisfactorily until the wires should be strung, and, until the legislature provides otherwise, we must think that the companies may do it, being answerable for any unnecessary, improper, or excessive cutting. We are con-

---

[1] The case erroneously cited is an Indiana case (150 Ind. 127), reported in 65 Am. St. Rep. 358.

vinced that it is the right of the company to cut branches in a proper case and manner, and in such case there is no liability to the abutting proprietor, who has no right to obstruct the public use of the highway.

The case is reversed, and, as the findings show that a trespass upon the close may have been committed, a new trial is ordered.

The other Justices concurred.