BOLAND *v.* WASHTENAW HOME TELEPHONE CO.

1. TELEGRAPHS AND TELEPHONES—TRESPASS—INJURY TO TREES—STATUTES—HIGHWAYS.

By Act No. 16, Pub. Acts 1899, containing a proviso that the construction and maintenance of telephone wires must not injure any trees along the highway, the rule announced in *Wyant* v. *Telephone Co.*, 123 Mich. 51, is changed and 2 Comp. Laws, § 6691, amended so that an adjoining property owner may recover for injuries to his trees that project into the highway and that may be cut or trimmed by a telephone company whose wires occupy the highway.[1.]

2. SAME—CONSTRUCTION.

The language of the statute applies alike to construction and to maintenance.

3. SAME.

The fact that a tree which the defendant trimmed had been cut and trimmed prior to plaintiff's ownership of the land would not justify the trespass.

4. SAME—MUNICIPAL CORPORATIONS—ORDINANCES—EVIDENCE.

Without evidence connecting defendant with an ordinance of the municipality that authorized a corporation of a different name to construct telephone lines in the streets, the enactment could not add to its rights, and, in any event, the ordinance would be invalid as against the subsequent amendment of 1899.

5. NEW TRIAL—APPEAL AND ERROR—REQUEST FOR REASONS.

Refusal to grant a new trial is not reviewable in the absence of reasons given or a request made therefor.

Error to Washtenaw; Kinne, J. Submitted April 7, 1910. ( Docket No. 28.) Decided May 7, 1910.

Trespass *quare clausum fregit* by Charles A. Boland and another against the Washtenaw Home. Telephone Company. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

---

[1] As to liability to abutting owner for mutilating trees in highway by erecting poles or stringing wires, see note to *Cartwright* v. *Liberty Telephone Co.* (Mo.), 12 L. R. A. (N. S.) 1125.

*A. J. Sawyer & Son*, for appellant.

*E. B. Norris* (*M. J. Cavanaugh*, of counsel), for appellees.

STONE, J. This is an action of trespass on lands, brought by the plaintiffs in justice's court to recover damages which they claim to have sustained by reason of the defendant cutting certain limbs and branches from an oak tree standing and growing on the land of the plaintiffs, and just inside the street line and fence, the limbs of which tree extended into the street. The trespass is alleged to have been committed on July 2, 1909. The plaintiffs recovered a judgment in justice's court, from which the defendant appealed to the circuit court, where the case was tried by a jury, and the plaintiffs recovered a verdict and judgment of $35. The defendant has brought the case here on writ of error. There are seven assignments of error which will be considered later.

It appears that about the year 1905 the defendant company extended its telephone line northward through the city of Ann Arbor to the village of Whitmore Lake, and it claims that it was necessary for it to place its lines on the opposite side of the street from the Bell Telephone Company lines along the same streets and highways, and that to do so it was necessary for it to string its lines through the branches of the tree in controversy. It appears that at the time of construction of this telephone line, the defendant had also cut and trimmed said tree, but the jury was instructed that the damages, if any, should be confined to the injuries done to the tree on July 2, 1909, and at no other time. The testimony was conflicting as to the extent of the cutting, and the injury to the tree. When asked how many limbs were cut off, and how large they were, the plaintiff testified :

"About six limbs, I should judge. It may be more. They may be about from 12 to 15 feet long—the limb after it was cut off. They were cut so close that where they are is on the inside of the fence, from four to six inches

from the body of the tree.   There was one that was cut about 10 feet away from the tree.   *   *   *   I should judge the limbs that were cut were about two inches in diameter, some of them, and some more.   I couldn't say how many more.   I didn't measure them, but I should judge about two or three inches through, something like that. The tree looked pretty bad after it was cut.   One side of the bottom was cut out from top to bottom.   About three feet below the wires there were limbs left.   A great hole was left there."

He further testified that the effect of the cutting was that it damaged the looks of the tree very much, and that it will probably never be what it was before the cutting. And that the tree stands inside the fence a few inches, and that the limbs of the tree ran out east, possibly 12 or 13 feet.   There was other testimony on the part of the plaintiff as to the extent and effect of the cutting and injury.   On behalf of defendant, its manager testified that at the cutting two limbs were cut two inches in diameter, and that the other limbs were branches of these two; that it was necessary, in order to keep telephone communications, that this tree should be trimmed.   He described the effect of contact of the wire with a limb, and said that the trimming was not as much as was necessary, and that he must trim the tree more; that the tree had not been damaged, and that it was impossible to put the wires on that side of the road without touching the tree. The franchise claimed to have been granted to the defendant by the city of Ann Arbor was received in evidence.

The first assignments of error which are argued by defendant are the sixth, seventh, and eighth.   They will be considered together.   They are as follows:

" (6) The court erred in submitting the case to the jury, and not directing a verdict for the defendant in accordance with the defendant's first request to charge as follows:

" 'Under the statutes and laws of this State and the evidence in this case, the plaintiffs are not entitled to recover, and you must render a verdict of no cause of action.'

" (7) The court erred in refusing to give the defendant's second request to charge, which was as follows:

" 'Under the statutes and laws of this State, the defendant was granted a franchise to build a telephone line over the highway, as shown by the testimony in this case, and that in accordance with the right thus conveyed the said defendant, some time in the year 1903, did build a line of telephone along the highway, and over the property mentioned in the testimony, and in the declaration in this cause, and that at that time the right was conferred, by statute and the laws of this State, upon the defendant to trim such trees as was necessary in order to construct said line, and that under that statute and the laws that then existed the said defendant trimmed the tree in question, and built its line in the same condition it is now built. And if the jury should find from the evidence in this case that the trimming done to the tree in controversy was simply to remove the subsequent growth of said tree, and to prevent its further growth, then these plaintiffs are not entitled to recover in this case, and your verdict should be no cause of action.'

" (8) The court erred in denying the defendant's motion, at the close of the testimony, to direct a verdict for the defendant for the reasons assigned in said motion."

These assignments of error raise the principal question in the case. The defendant claims that the evidence disclosed the fact that the defendant had in some way secured the right to cut or trim this tree from the former owner, and had exercised that right before the plaintiffs were owners of this land. It would have been more accurate if it had been claimed that the defendant had built its line, and had trimmed this tree, before the plaintiffs became the owners of the land, and that when plaintiffs purchased the land the line was then established, where it now is. There was no evidence that the defendant had ever secured the right to cut or trim the tree, other than that given by existing law. Counsel refer to the case of *Wyant* v. *Telephone Co.*, 123 Mich. 51 (81 N. W. 928, 47 L. R. A, 497, 81 Am. St. Rep. 155), and cite therefrom this language:

" That the grant by the State to run telephone lines along the highways of the State of necessity carried with it the right to protect those lines and make them effective

by cutting trees, or trimming trees, or removing trees, so far as was necessary to permit the company to successfully operate their lines."

The record in the above case shows that it was begun September 22, 1898, and the cause of action necessarily arose before that date.   At that time section 6691, 2 Comp. Laws, was in force.   It was as follows:

"Every such corporation shall have the power to construct and maintain lines of wire or other material, for use in the transmission of telephonic messages along, over, across or under any public places, streets and highways, and across or under any of the waters in this State, with all necessary erections and fixtures therefor:   *Provided*, That the same shall not injuriously interfere with other public uses of the said places, streets, and highways and the navigation of said waters."

By Act No. 16, Public Acts 1899, the above section was amended, so that the proviso now reads as follows:

"*Provided*, That the same shall not injuriously interfere with other public uses of the said places, streets and highways, or injure any trees located along the line of such streets or highways."

The language of this statute must be held to apply alike to the construction, and also to all acts in the maintenance of telephone lines, wherever situated; the language being:

"Every such corporation shall have power to construct and maintain lines of wire or other material," etc.

It appears from the record that the defendant constructed its initial line out North Main street, and in front of the property of the plaintiffs, in the year 1905.   It must be held, it seems to us, that the rule in *Wyant* v. *Telephone Co.*, *supra*, has been changed by legislative enactment, and at the time when the defendant, in its alleged maintenance of its telephone line, went upon the property of the plaintiffs and cut and trimmed said tree, if in such cutting and trimming it injured said tree, the defendant had no statutory authority so to do; but, on the contrary, it was expressly forbidden so to do, by the plain language

of the statute. We think that there was a question of fact for the jury as to whether the tree was injured or not, and as to the nature and extent of the injury if it was injured. The case seems to have been fairly submitted to the jury upon this question. The court said:

"The cutting of this tree is admitted by the defendant to have been done by the defendant. The defendant further insists that in the cutting of this tree no injury was done whatever to the tree. If you find from the evidence that the defendant was right about that, your verdict should be no cause of action. On the other hand, the plaintiff insists that the cutting of this tree was a serious injury to the tree.

"*Mr. Norris:* And to his land.

"*The Court:* Very well, and to his land. Now, if from the evidence you find that the cutting of this tree injured the property of the plaintiff, I think he would be entitled to recover. So it will be a mere question of fact. If you come to the question of damages, if you find any injury done to this tree, you will determine the extent of that injury, and endeavor to compensate the plaintiff for the injury thereto. But it has no reference to the land whatever; it is the injury to the tree, and nothing else."

Then followed the language, already referred to, that the damages, if any, must be confined to the cutting of July 2, 1909. We cannot agree with the contention of the defendant that it had a vested right to, at any and all times, do all necessary cutting and trimming of this tree, without reference to whether such act injured the tree or not. The amended statute applied to lines then constructed and to be maintained. There was no evidence upon which to predicate such claim, other than the fact that the tree had been cut before the plaintiff's title began. Certainly one trespass could not be justified by proving an earlier one, where there was no prescriptive right shown. The claim of the defendant is well illustrated by the following testimony of its manager:

"*Q.* Irrespective of ownership and its damage, you claim the absolute right to cut this tree without regard to the damage to it?

"*A.* If it is in the highway and interferes with the course of the line.

"*Q.* But this tree is not in the highway.

"*A.* The limbs were.   Our poles are 35 feet high.   If we had put this pole up 10 feet higher it would have made it worse.   *   *   *

"*Q.* But you did not cure these contacts from the branches by cutting the branches off ?

"*A.* No, sir; we took the limb right off.

"*Q.* You might have saved yourself some trouble by cutting the tree down ?

"*A.* Yes, sir.

"*Q.* Why didn't you ?

"*A.* Didn't think it advisable.

"*Q.* You did not claim to own the tree ?

"*A.* No, sir; and the telephone company did not claim to own the tree."

An ordinance authorizing the Washtenaw County Telephone Company to construct a telephone line in the city of Ann Arbor, dated March 5, 1896, was received in evidence.   It does not clearly appear from the record what, if anything, the defendant claims for this evidence. There was no evidence connecting it with this defendant, and it could not be valid if in conflict with the later statute.   It does not clearly appear that the defendant ever made application for, nor did the city authorities ever locate, the defendant's telephone line out Main street and in front of plaintiffs' property, in so far as this record shows.

Error is assigned upon the refusal to grant a new trial. The record does not show that the court was requested to file reasons in disposing of the motion, and there is nothing before us in the matter.   The remaining assignment of error relating to the charge of the court has been examined, but we are satisfied that there was no error in the charge, the substance of which we have quoted above.

We find no prejudicial error in the record, and the judgment of the circuit court is affirmed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.