BOLENDER *v.* SOUTHERN MICHIGAN TELEPHONE CO.

TELEGRAPHS AND TELEPHONES—HIGHWAYS—SHADE TREES.

Shade trees in the highway adjacent to a farm belong to the owner of the land and may not be destroyed or injuriously trimmed by a telephone company in violation of 2 Comp. Laws, § 6691 (3 How. Stat. [2d Ed.] § 7214), Act No. 283, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 2348).[1]

Error to St. Joseph; Knowlen, J. Submitted June 17, 1914. (Docket No. 88.) Decided October 2, 1914.

Case by William F. A. Bolender against the Southern Michigan Telephone Company for injuries done to shade trees in the public highway. Judgment for plaintiff. Defendant brings error. Affirmed.

[1] As to the liability to abutting owner for mutilating trees in highway by erecting poles or stringing wires, see notes in 12 L. R. A. (N. S.) 1125; 30 L. R. A. (N. S.) 1084, and 51 L. R. A. (N. S.) 1082.

*H. P. Stewart* (*Boudeman, Adams & Weston,* of counsel), for appellant.

*George H. Arnold,* for appellee.

MOORE, J.  This suit is brought to recover damages for the cutting of shade trees by defendant company. From a judgment of $250 in favor of the plaintiff, the case is brought here by writ of error.

The version of the plaintiff as to what happened is as follows:

"I reside in Lockport township; my farm joins on the west side of the village of Centreville.  I have resided there 30 years.  I am the plaintiff in this case. The Southern Michigan Telephone Company put a line along what is known as the Centreville road in the latter part of October, 1906, as near as I can remember.  In putting that line through, they cut the crown right out of the trees that were in the road.  There were 2 large oaks, 1 elm, and 39 hard maples.  Those trees had been set out there when I bought the farm; they were quite nice trees.  They were very thrifty trees.  They had a nice appearance.  After the cutting of the crown of them they looked pretty bad; the tops were all cut out.  There is a row on each side of the street, and they are now about 10 feet lower than those on the other side.  I couldn't say how much of the tops they took out, but they must have taken off 10 or 15 feet.  There is branches there that are— oh, they are 6 inches in diameter, 5 or 6 inches, standing straight up; the heart of the tree is cut off.  Those limbs have died down now, and the bark is all off about 4 feet from the top, they are dead.  *  *  * The damage by depreciation of the farm is at least $1,000."

It was the claim of defendant that it did no more trimming than it was obliged to do, and that, in fact, no injury was done to the trees or the farm.

We quote enough from the brief of counsel to present its claim:

"The case is peculiar in this, that here was, by a public service corporation, a public work which of necessity must be placed within the public highway, and which was authorized to be so constructed.

"It is just as essential that a telephone line be constructed as it is that a telegraph line, a sewer, a waterworks, an electric light plant, a gas plant, or a railroad be built. Perhaps these various public service concerns are not all of equal value to the community, but certainly our modern civilization calls for the use of the telephone more than it does for some of the other things mentioned, although all of such things are of considerable convenience. * * *

"A highway is made for public convenience and as a public necessity, and the person who owns the land over which such highway passes is paid for his land which is taken just the same as he is paid for it if a railway company takes a portion of his land for railway purposes. If a railroad gets and pays for 100 feet in width across a farm, the man who formerly owned the strip has no right to plant trees on it, and on principle he ought not to have any more right to plant trees upon the land taken for the public use as a highway. * * * This action is one of trespass upon his lands, according to the plaintiff's declaration. The trees in question standing in a public highway, there could be no trespass on the lands described. If any right of action accrued to plaintiff on account of the alleged cutting of these trees, it was an action of trespass on the case, not for an entry and trespass upon his farm, but for the injury of property in which he had an interest standing within the highway."

These various claims make it important to consider the status of the parties.

In 4 Words and Phrases, under the subject "Highway," at page 3297, appears the following:

"A highway is nothing but an easement comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil, nor give the public the legal pos-

session of it. *Adams* v. *Rivers,* 11 Barb. (N. Y.) 390, 398) ; *Kelsey* v. *King,* 33 How. Prac. (N. Y.) 39, 44; *Peck* v. *Smith,* 1 Conn. 103, 132 (6 Am. Dec. 216) ; *In re Road from Fitzwater St. to Shippen St.,* 4 Serg. & R. (Pa.) 106; *Starr* v. *Camden & A. R. Co.,* 24 N. J. Law, 592, 597; *Smith* v. *City of San Luis Obispo,* 95 Cal. 463 (30 Pac. 591, 593) ; *Newton* v. *New York, N. H. & H. R. Co.,* 72 Conn. 420 (44 Atl. 813, 815) ; *Lynch* v. *Town of Rutland,* 66 Vt. 570 (29 Atl. 1015, 1016)." * * *

"Highways are regarded as easements in the land over which they are laid out; hence the owner of the land is not divested of his title, but it is merely made subject to the easement. When a highway is laid out the public acquires no more than a right of way with the powers and privileges incident to that right, such as digging the soil, cutting timber and other materials within the space of the road in a reasonable manner for the purpose of making and repairing the road and its bridges. *Jackson* v. *Hathaway,* 15 Johns. (N. Y.) 447, 452 (8 Am. Dec. 263 [cited and approved in *Whitbeck* v. *Cook,* 15 Johns. [N. Y.] 483, 490, 8 Am. Dec. 272] )." * * *

"A public highway is a way in which the public are entitled to a right of passage. The title to the soil, stone, etc., in such a way continues in the owners of the lands over which the way passes. The land is merely dedicated to the public for particular purposes. *Chambers* v. *Furry,* 1 Yeates (Pa.), 167, 169."

Whatever may be said of the rights of the public in the streets of a city, we think these quotations are descriptive of the rights of the public in a country highway.

In *Clark* v. *Dasso,* 34 Mich. 86, Chief Justice COOLEY, speaking for the court, made use of this language:

"The policy of our laws, as is clearly indicated by the statute already quoted, favors the planting and preservation of shade trees in the public streets where they do not constitute actual obstructions. Undoubtedly there must be some officer clothed with authority

to protect the highways against the excessive planting or the improper location of trees, and the commissioner of highways is a very suitable officer to be intrusted with this authority in the townships. But, where he is authorized to order the removal of shade trees, it is a great mistake to assume that he may exercise his power in a wanton or reckless manner with impunity. Certain principles must always govern the action of these officers, if they are to keep within the protection of the law. In the first place, the policy of the law is to be considered, which would be wholly defeated if one had no better protection for his shade trees than the whim or caprice of successive commissioners, any one of whom might destroy in an hour all that had been accomplished in many years. Then, again, it is to be remembered that the trees are the property of the adjacent owner, who cannot lawfully be deprived of any species of property in the summary mode which was adopted in this case."

In *People's Ice Co.* v. *Steamer "Excelsior,"* 44 Mich. 229 (6 N. W. 636, 38 Am. Rep. 246), Justice MARSTON made use of the following language:

"Ordinarily it may be said that the entire width of the highway may be used, yet the owner of the land over which it passes may, within the limits thereof, plant trees, set posts, and do such other acts as will add to his convenience or assist in beautifying his premises. He is encouraged in doing this by public sentiment; in the remission of taxes by the public authorities for the planting of trees; and in the protection which the law gives him by the punishment of those who interfere with or destroy what he has done. Public convenience may in time in particular locations require the removal of some of these things, and, whenever the necessity arises and the public authorities request their removal, then the private must give way to the public or paramount right. But while permitted to remain, no one traveling the highway could wilfully injure or destroy them, and should any one do so he would justly be held responsible, notwithstanding his plea of a claim of right to travel over any part of the highway. If the law were other-

wise, the streets in our cities and villages, and our public highways, would soon be stripped of their shade and ornament. *Clark* v. *Dasso,* 34 Mich. 86."

The legislature has recognized the desirability of shade trees in highways and in 2 Howell's Statutes (2d Ed.), § 2345, provides many details as to where they shall be placed. Section 2346 authorizes the highway commissioner to set out shade trees and to expend a share of the public moneys for that purpose. Section 2348 reads as follows:

"2348.  SEC. 4.  Telephone companies shall have power to construct and maintain lines of wire or other material, for use in the transmission of telephonic messages along, over, across, or under any public places, streets and highways, and across or under any of the waters in this State, with all necessary erections and fixtures therefor: *Provided,* that said telephone companies, before the construction and erection of said telephone lines and poles, shall first obtain the consent of the duly constituted authorities of the city, village or township through or along which said telephone lines and poles are to be constructed and erected: *Provided further,* that the same shall not injuriously interfere with other public uses of the said places, streets and highways, or injure, deface, tear, cut down, or destroy any tree or shrub planted along the margin of any highway in this State, or purposely left there for shade or ornament nor shall the same interfere with the navigation of said waters, or the running of railway trains."

We had another statute in relation to telephone companies and the rights possessed by them in the highways. That statute was construed in *Wyant* v. *Telephone Co.,* 123 Mich. 51 (81 N. W. 928, 47 L. R. A. 497, 81 Am. St. Rep. 155), and a reference to that opinion will show it to be in harmony with some of the views expressed by counsel which we have already quoted, but, after that opinion was handed down, the

so-called "telephone statute" was amended so as to now read as follows:

"Every such corporation shall have power to construct and maintain lines of wire or other material, for use in the transmission of telephonic messages along, over, across, or under any public places, streets and highways, and across or under any of the waters in this State, with all necessary erections and fixtures therefor: *Provided*, that the same shall not injuriously interfere with other public uses of the said places, streets, and highways, or injure any trees located along the line of such streets or highways." Section 7214, 3 How. Stat. (2d Ed.), 2 Comp. Laws, § 6691.

The statute we have just quoted was construed in *Boland* v. *Telephone Co.*, 161 Mich. 315 (126 N. W. 425). The opinion in that case settles against the contention of appellant many of the questions involved in this case.

The instant case, then, presents a situation where the plaintiff is the owner in fee of the land where the shade trees are, with the public having an easement in the highway, which is properly described in the quotations we have made from Words and Phrases. The telephone company has such rights in the highway as the statutes of the State have given it, and it possesses no other rights therein. The language used in sections 2348 and 7214, which we have quoted, is not ambiguous. No right is given in those sections, to a telephone company, to injure, cut down, or destroy any shade tree; not only so, but to do those things is forbidden. As the rights of the company are limited by the statute, when it goes outside of the limitations imposed by the statute, it becomes liable in damages.

We find no reversible error.

Judgment is sustained.

McAlvay, C. J., and Brooke, Kuhn, Stone, Ostrander, Bird, and Steere, JJ., concurred.