[Civ. No. 1588.   Third Appellate District.—February 7, 1917.]

CATHERINE ALTPETER et al., Respondents, v. POSTAL TELEGRAPH-CABLE COMPANY (a Corporation), Appellant.

MUNICIPAL CORPORATIONS — MAINTENANCE OF GROWING TREES ALONG SIDEWALKS.—Trees may lawfully be grown and maintained along the sidewalks in the streets of cities and towns and in front of the premises of abutting property owners, and are not nuisances.

ID.—INJURY TO TREES — RIGHT OF ACTION BY ABUTTING PROPERTY OWNER.—While the owner of the property in front of which trees are grown and standing has only a qualified or limited interest in the trees—an interest which, in other words, is subject and subordinate to the rights of the city to trim or remove them whenever the public interests require such action—if a person injures such trees without lawful right or authority, such owner may maintain an action for damages for the injury so inflicted and recover such damages as he may be able to show that he has suffered by reason of any depreciation in the value of his property which has been occasioned by such injury.

ID.—TRIMMING OR REMOVING OF TREES BY MUNICIPALITY—DAMNUM ABSQUE INJURIA.—Where trees grown along the sidewalks in streets are cut, trimmed, or removed by the city or town for the purpose of facilitating the use of the street in a legal manner by the public, the damage resulting from such cutting or removal to the owner of the property in front of which such trees are standing is *damnum absque injuria.*

ID.—GRANTING OF USE OF STREETS TO PUBLIC UTILITY CORPORATIONS—
REMOVAL OF INTERFERING OBJECTS — RIGHT OF CORPORATIONS.—
Cities and towns are generally empowered, as agents of the state,
to grant to public utility corporations the right to use, in a reason-
able manner, or so as not to interfere with common traffic, their
streets for the purpose of installing and maintaining in such streets
the equipments essential to the carrying on of the business of such
corporations, and when such right is so granted, such corporations
are authorized, upon such conditions or under such restrictions as
may reasonably have been imposed, to remove from the streets so
used any object or thing which will, if permitted to exist, prevent
proper and efficient service by them as such corporations to the
public.

ID.—TELEGRAPH CORPORATION—RIGHT TO CLEAR WIRES OF BRANCHES OF
TREES.—A telegraph and telephone corporation has the right to cut
the branches of trees growing along the sidewalks in the streets
of a municipality to clear its wires to prevent interference with
their operation, and is not liable for damages to an abutting prop-
erty owner unless it does more than is necessary for the proper
and efficient working of its wires.

ID.—ACTION FOR DAMAGES—EVIDENCE—BURDEN OF PROOF.—In an ac-
tion by a property owner against a telegraph company for damages
caused by the company's cutting of the branches of trees standing
in front of plaintiff's property to clear its wires, the burden is upon
the plaintiff to show that it was unnecessary to remove such
branches or that the defendant removed more branches than was
necessary.

APPEAL from a judgment of the Superior Court of Yolo
County. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

Willard P. Smith, and B. B. Blake, for Appellant.

E. E. Gaddis, for Respondents.

HART, J.—This is an action for damages for the alleged
injury of certain walnut trees standing and growing in and
on Court Street, in the city of Woodland, in front of the
plaintiff's houses, situated on lots 8, 9, and 10, of block 4,
of said city, said lots being the property of the plaintiffs.

The complaint alleges a wrongful and unauthorized cutting
of the limbs of the trees, the charge so alleged being that the
defendant without lawful or any authority knowingly and

willfully cut down, chopped, mangled, mutilated, disfigured, and destroyed four of said trees, and prays for a judgment for five hundred dollars and treble any sum at which damages may be assessed.   (Code Civ. Proc., sec. 733.)

The answer denies the allegations of the complaint and, as an affirmative defense, describes the character of the defendant's business, alleges the necessity of clearing its wires from the branches of the said trees, through the branches of which said wires pass, alleges that the lines of the defendant have been maintained on the street in question and through said trees for a long period of time prior to the acquisition by the plaintiffs of the premises in front of which said trees stand.

The cause was tried by the court without a jury, and judgment rendered and entered in favor of the plaintiffs for the sum of $450 and costs.

This appeal, supported by a bill of exceptions, is prosecuted by the defendant from said judgment.

The action is founded on section 733 of the Code of Civil Procedure, *supra,* which reads: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any court having jurisdiction."

Section 3346 of the Civil Code prescribes the measure of damages for the wrongful injuries to timber, trees, or underwood "upon the land of another, or removal thereof."

The general contention of the defendant is that the findings derive no support from the evidence.

The particular proposition urged by the defendant, however, is whether or not a telegraph company which maintains its lines in the public streets of a town or city may, as against an abutting property owner, lawfully trim trees growing and standing in a street, and through which its wires pass, for the purpose of preventing branches of such trees from in-

terfering with the proper operation of the wires as transmitters of telegraph messages.

These propositions will not be controverted: 1 That trees may lawfully be grown and maintained along the sidewalks in the streets of cities and towns and in front of the premises of abutting property owners—that is to say, that trees so grown are not nuisances as would be a purpresture of any character which would ordinarily have the effect of obstructing or materially interfering with traffic in and over the street; 2. That, while the owner of property in front of which trees are grown and standing has only a qualified or limited interest in the trees—an interest which, in other words, is subject and subordinate to the right of the city to trim or remove them whenever the public interests require such action—if a person injures such trees without lawful right or authority, such owner may maintain an action for damages for the injury so inflicted, and recover such damages as he may be able to show that he has suffered by reason of any depreciation in the value of his property which has been occasioned by such injury; 3. That, where trees so grown are cut, trimmed, or removed by the city or town for the purpose of facilitating the use of the street in a legal manner by the public, then the damage resulting from such cutting or removal to the owner of the property in front of which such trees are standing is *dammum absque injuria;* 4. That cities and towns are generally empowered, as agents of the state, to grant to public utility corporations, such as are engaged in the distribution of water, gas, electricity, or the transmission by electric currents of telegrams or messages, the right to use, in a reasonable manner, or so as not to interfere with common traffic, their streets for the purpose of installing and maintaining in such streets the equipments essential to the carrying on of the business of such corporations, and that, when such right or privilege or franchise is so granted, such corporations are authorized, upon such conditions or under such restrictions as may have reasonably been imposed, to remove from the streets so used any object or thing which will, if permitted to exist, prevent proper and efficient service by them as such corporations to the public.

The last stated of the foregoing propositions is peculiarly applicable to telegraph and telephone corporations maintaining their wires over and along the streets of cities and other

urban communities. "The telegraph company," well say counsel for the defendant in their opening brief filed herein, "exercises its franchise in the street as a public agency and not as a private individual. It is charged with a public duty which it can neither shirk nor avoid. It must maintain its lines at all times in a safe and workable condition, so that the messages of the public may be transmitted over them without delay and without error. In this respect, it exercises the same functions over its wires that the public authorities exercise over the streets and highways themselves. The latter are endowed with the right and charged with the duty of removing trees whenever they become an obstruction to travel by foot or vehicle over the surface of the highway. The same reasoning which supports this right requires that the owners of the telegraph lines dedicated to public use should be endowed with a similar right and charged with a similar duty whenever the free transmission of telegrams over their wires is obstructed by the growth of the branches of trees among the wires or from any other cause. And just as the street and highway authorities are given a wide latitude of discretion in performing their duties, so the telegraph company should be given a broad latitude in removing limbs of trees so long as the removal is not done carelessly or in bad faith. Furthermore, the telegraph company having been granted the right by the state to construct its lines on the public highways, such incidental powers as are necessary to make the principal grant effective naturally follow it. If it were otherwise the principal grant would exist only in name, and would be absolutely of no value or effect for practical purposes. Recognizing the soundness of this reasoning, the courts have uniformly held that the power and right to trim trees interfering with telegraph wires exist in the telegraph company owning the wires." (See *Southern Bell Tel. & Tel. Co.* v. *Constantine,* 61 Fed. 61, [9 C. C. A. 359] ; *Southern Bell Tel. Co.* v. *Francis,* 109 Ala. 224, 229, [55 Am. St. Rep. 930, 31 L. R. A. 193, 19 South. 1] ; *Meyer* v. *Standard Tel. Co.,* 122 Iowa, 514, [98 N. W. 300] ; *Wyant* v. *Central Tel. Co.,* 123 Mich. 51, [81 Am. St. Rep. 155, 47 L. R. A. 497, 81 N. W. 928] ; *Miller* v. *Detroit etc. Ry.,* 125 Mich. 171, [84 Am. St. Rep. 569, 51 L. R. A. 955, 84 N. W. 49] ; *Dodd* v. *Consolidated Traction Co.,* 57 N. J. L. 482, [31 Atl. 980].)

Of course, a telegraph or telephone corporation, in trimming or severing the branches of trees to prevent contact of their wires therewith, will not be permitted to do more in that respect than is necessary for the proper and efficient working of their wires. If it goes beyond this, or wantonly and unnecessarily cuts or mutilates the trees—that is, if such corporation removes branches or limbs which do not and, from their situation with respect to the wires, cannot interfere with or impair the proper and efficient use of such wires, then it is liable for any damages thereby caused to the owner of the premises in front of which the trees stand.

The principles stated above are elementary, and applying them to the facts of the instant case as the evidence presented before us discloses them, we cannot perceive how the findings may be upheld.

The facts are: That the predecessor in interest of the defendant installed a telegraph line in the city of Woodland and erected the wires over and along Court Street, in said city, and through the trees in question in the year 1886, and have ever since so maintained said wires. From time to time during the period from 1886–87 down to the date of the trimming of said trees in August, 1911, the defendant and its predecessor in interest have, when the exigency of the case required it, trimmed and severed from the trees certain of the branches and limbs thereof. That such cutting and trimming are absolutely necessary whenever the branches and limbs have so grown and spread out as to bring them in contact with the defendant's wires, is so obvious a proposition that it will not be disputed. But a clearer understanding of this proposition may be obtained from the testimony of Mr. Blake, president and general superintendent of the defendant. For over forty years, as an operator, a chief operator, an inspector of lines, and as manager, Blake has been identified with the telegraph business. His testimony stands in the record uncontradicted, as indeed it could not in its general aspect be contradicted, since it involves a lucid explanation of the philosophy of telegraphy, the method of its operation, and the effect of the contact of telegraph wires with foreign substances under certain conditions upon messages transmitted over the wires, all of which propositions are now-a-days quite obvious to the average understanding. He explained: ''Telegrams are transmitted over wires by the

electro-magnetic system of telegraph invented by Professor
Morse.   The electricity flows on the wire and the messages
are made by dots and dashes; certain combinations of dots
and dashes produce letters and the dots and dashes are made
by closing and breaking the circuit, then completing the cir-
cuit, allowing the electricity to flow through the wire and
back through the ground by interrupting it, and a dot is
really a short dash.   In the different capacities in which I
have been employed, it has been my duty to ascertain matters
interfering with the working of lines of telegraph.   The limbs
of a green tree growing from the ground up into and among
the wires affect the transmission of messages by diverting
a certain amount of current from the wire to the ground.
A dry tree will do the same thing when wet by rain, and
when a green tree is wet by rain, it causes a greater escape,
as we call it.   That is very similar to putting a hole in a
water-pipe that you are putting water through.   A small hole
has very little effect.   The larger the hole, the more water
escapes and the less the force at the end of the pipe.   The
same thing applies to electricity; if it leaks off the line, you
lose the strength, and that strength is required to operate the
telegraph instrument.   Where the telegraph is employed for
business purposes, you can't work the wires safely where trees
are among them.   Sometimes you can't work them at all,
but never safely if there are any limbs touching the wires.
If a limb were lying against the wire solidly, it would inter-
rupt the signal on the wire so that the current would not
pass through to the far end of the wire and produce a signal.
If the wind was blowing the limb against the wire, making
an intermittent escape, it would mutilate the signals.   We
have had cases where telegrams were sent from San Fran-
cisco to New York where a very plain word appears on the
tape in San Francisco and a totally different word appears
in New York.   Something hit the wire and mutilated the
signals and made a complete change.   We have three claims
for damages we have traced to that very thing.''

As to the cutting of the trees, the plaintiff called as a wit-
ness E. P. Heller, the line repairer and ''trouble-man'' of the
defendant in Woodland in August, 1911.   Heller did the cut-
ting and trimming complained of by the plaintiffs.   After
testifying, on direct examination, that he trimmed the trees
and severed therefrom a certain number of branches, he was .

turned over for cross-examination and testified: "I trimmed out the new growth that had been formed on the trees since they had been trimmed the last time; that is, the suckers and the new growth that had formed on these limbs since the previous trimming. This new growth was merely limbs that had grown out from the stubs where they had been cut off previously. In other words, it is what is commonly known as suckers that sprang out from around the top of the old stubs. I don't think these stubs would exceed two or three inches in diameter. The suckers had formed around where the limbs had been cut off previously, forming a little bush at the top and just immediately under that edge and probably two or three or four inches down; we cut it off like that [indicating] and let it down to make a clean job of it. With reference to the wires of the telegraph company, *we trimmed the trees just enough to clear them well under the wires and to get them away from the wires enough not to cause trouble.* [Italics ours.] I did not use an ax. I never trim a tree with an ax."

The witness Hutchinson, testifying for the plaintiff, declared that he saw Heller and his assistants cutting the branches and that the work was, he thought, done with a hatchet, although he subsequently stated that he looked at the severed branches or limbs the morning following the day they were removed from the trees, and that the larger limbs had the appearance of having been "sawed off." This same witness further testified that "the size of the big limbs sawed off were from as big as my thumb up to three inches. . . . There was a place cut out through the trees that looked four or five feet wide. That left the big limbs coming up on either side."

The witness Keehn stated that he was "called in by Mr. Altpeter after the cutting of these trees. I measured up the size of the limbs that were cut. They averaged all the way from one to one and one-half inches. The stubs are still on the trees and can be measured up if desired. I couldn't tell exactly how many limbs were cut. I should judge all the way from five to six branches on each tree, mostly out of the center of the tree. The brush on the ground after it was cut would make a good-sized wagon-load, I should judge. The trees were black walnut, about eighteen or twenty years old. Some of these cuttings were on an average of about ten or twelve feet below the cross-arm."

The witness Murray, for the plaintiffs, testified that "the tops were cut out of the trees, leaving the wires six or eight feet from the points where the limbs were taken from the trees."

Mrs. Altpeter, one of the plaintiffs, testified that the trees were, in the month of August, 1911, "terribly disfigured by cutting them off right straight at the top. They have no shade at the top. . . . We had no trees trimmed at that time and gave no permission to anyone to trim them. . . . I did not see any of the branches that were cut off. The main limbs of the trees were cut. I don't know how big the limbs were that were cut off, but they were the main limbs, the center limbs, I would call it."

The foregoing comprehends, substantially, a statement of all the testimony presented by the plaintiffs upon the question as to the cutting or trimming of the trees. The burden was upon the plaintiffs to show that either it was entirely unnecessary to remove any branches or limbs from the trees for the purpose claimed by the defendant, or that the latter removed more limbs and branches than the situation with respect to its wires called for. This burden they wholly failed to sustain. Heller was the only witness who gave any testimony upon this question, and he declared, as will be observed, that only so much and such parts of the trees were trimmed and cut as were necessary to prevent collision between the wires and the branches—a collision or contact which would have caused such interference with the transmission of messages over the wires as would necessarily have destroyed that efficient service which the defendant, as a telegraph corporation, owes to the public, and the failure to furnish which may subject it to the severest penalties in one form or another. This was one of the vital questions of fact in the case. Indeed, it constituted the very foundation of plaintiffs' right to a recovery; for, obviously, since the defendant, as a public service corporation, is, as above explained, charged with the duty of so maintaining its wires as to facilitate the proper and efficient performance of its obligations to the public, it is necessarily its duty to remove from any point along the route over which it has been granted the right, either by the public authorities or by judgments in condemnation or by agreements with private individuals, to run and maintain its lines, any obstruction interfering with the safe and proper

transmission of messages. As has been shown, it had the lawful authority (Code Civ. Proc., sec. 733) to cut or trim limbs and branches from the trees in question, if necessary for a safe and proper transmission of messages over its wires passing through and in said trees. Therefore, the number of the branches or limbs removed, whether large or small, or the size of the limbs or branches so removed, whether large or small, or what influence and to what extent, if any, the severance of the limbs and branches from the trees exerted in depreciating the value of the property in front of which the trees stand and grow, constitute facts which become wholly immaterial and unimportant unless it be shown that the defendant unnecessarily stripped the trees of certain of their branches and limbs or destroyed more branches and limbs than the necessities of the situation actually required. In this case, whatever may be the extent and effect of the damage the cutting and trimming of the limbs and branches of the trees might have had on the property of the plaintiffs, it having been shown by the evidence without conflict that such cutting and trimming were necessary to the safe and proper operation of the defendant's wires as transmitters of messages, the damage so inflicted is *damnum absque injuria,* and, therefore, can form no basis for a recovery by the plaintiffs.

The defendant has presented and argued other points in impeachment of the judgment, but, in view of the conclusion above announced, they need not be considered.

For the reasons above explained, the judgment must be reversed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.